STATE of Missouri, Respondent,

v.

Ryan SEELER, Appellant.

No. SC 90583.

Supreme Court of Missouri,
En Banc.

July 16, 2010.

Rehearing Denied Aug. 31, 2010.

Richard H. Sindel, Sindel, Sindel & Noble PC, Clayton, for Appellant.

Terrence M. Messonnier, Shaun T. Mackelprang, Jayne T. Woods, Attorney General's Office, Jefferson City, for the State.

MICHAEL A. WOLFF, Judge.

### Introduction

This is a simple story, versions of which are repeated with depressing regularity. Ryan Seeler went to a baseball game, then to a restaurant in downtown St. Louis and then headed home on westbound Interstate Highway 64 (U.S. highway 40). He had had some drinks. He drove into a construction zone on I–64 in Chesterfield, where he struck and killed Gavin Donahue, a 22–year-old engineering student who was working on a paving project on the highway.

The crime charged, first-degree involuntary manslaughter, should be simple as well. That, unfortunately, is not so.

The Missouri statute's simple version of the crime is this: A person in an intoxicated condition commits first-degree involuntary manslaughter if he operates a motor vehicle and acts with criminal negligence to cause the death of any person. Section 565.024.1(2).[1] A person is criminally negligent "when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.5. In prosecuting Seeler, the state must specify, and the jury must find, the particular facts that lead to the conclusion that he was criminally negligent. *See* MAI–CR 3d 314.12.

This simple version of involuntary manslaughter is classified as a class C felony, results in a sentence of up to seven years

---

1. All statutory references are to RSMo Supp. 2007 unless otherwise indicated.

in prison if the defendant convicted is a first-time offender. Seeler had no prior felony record.

The state however, apparently sought a harsher penalty than the class C felony punishment that the simple version of the involuntary manslaughter law allows. There is a more complicated option offered in section 565.024, which allows the state to charge Seeler with involuntary manslaughter as a class B felony, which carries punishment of up to 15 years in prison.[2] This class B felony, as described in section 565.024.1(3)(a), defines the crime of involuntary manslaughter as to "[c]ause the death of any person not a passenger in the vehicle operated by the defendant, including the death of an individual that results from the defendant's vehicle leaving a highway ... or the highway's right-of-way...."

Citing this more complicated option of a class B felony, the indictment charged that Seeler acted "[w]hile under the influence of alcohol and/or a controlled substance caus[ing] the death of Gavin Donahue by striking him with a motor vehicle while operating a motor vehicle with criminal negligence in that defendant was driving in a close[d] construction zone, thereby leaving said highway's right-of-way...."

After the close of the state's evidence, the defense moved for acquittal because the evidence did not show that Seeler's car had left the highway's right-of-way. In response, the state requested leave to amend the indictment and substitute an information in which the phrase "leaving the highway's right-of-way" (quoted above) was replaced with "drove into a lane closed to traffic."

Seeler objected that the timing of the amended charge was prejudicial because it changed the facts charged—Seeler's defense had come prepared to respond to the charge that his car had left the highway's right-of-way. The trial court allowed the amended class B felony charge over Seeler's objection.

The jury found Seeler guilty of the amended charge and recommended seven years in prison, which the court imposed.

Seeler's appeal raises two questions: (1) whether the statute is unconstitutionally void for vagueness;[3] and (2) whether the amended information—which changed the state's factual theory after the state's evidence had been presented—was prejudicial.

The Court concludes:

(1) Though confusing, the manslaughter law is not vague. Its meaning can be discerned. It is not unconstitutional.

(2) The change in the factual basis of the charge, as contained in the information and in the jury instruction—after the state had presented its evidence—was prejudicial to Seeler's opportunity to defend himself against the offense as charged.

---

2. Under Missouri's complex scheme of sentencing laws, an offender sentenced to prison for the class B felony of first-degree involuntary manslaughter must serve 85 percent of his sentence before being eligible for parole. Section 565.024.2. There is no such minimum specified for a person sentenced to prison for the class C felony of first-degree involuntary manslaughter. In this case, the jury recommended seven years on the B felony, instead of the 15-year maximum, and because it is a B felony, Seeler would be required to serve at least 85 percent of the seven years before being paroled. If a defendant receives seven years on a class C felony, however, the time served generally will be less than 85 percent of the sentence because there is no minimum requirement.

3. Because Seeler challenges the validity of the statute, this Court has jurisdiction of this direct appeal. Mo. Const. art. V, sec. 3.

Seeler came to trial prepared to defend against the charge that he left the highway's right-of-way and the amendment rendered his defenses inapplicable.

The circuit court's judgment is reversed, and the case is remanded.

**Facts and Procedural History**

Seeler attended a Cardinals baseball game in July 2007 in St. Louis. He left the game around 11 p.m. and went to a downtown restaurant that serves liquor. At 1:45 a.m., Seeler left to go home. According to Seeler, between 6:30 p.m. and 1:45 a.m. he drank four beers—two at the game and two at the restaurant—and ate two hot dogs. As Seeler was driving west on Interstate 64 (U.S. highway 40), he noticed signs indicating road work ahead. The two left lanes were blocked off, starting on westbound I-64 at Olive Blvd., leaving only the far right lane open. Construction cones were set up such that they intruded into the open right lane, forcing motorists onto the shoulder and rumble strips. According to Seeler's defense, the cones were anywhere from 168 to 175 feet apart, which he contends was not sufficient to close the lane.

As Seeler entered the Chesterfield valley, he traveled behind a dump truck in the far right lane. The dump truck moved into the middle lane, and Seeler followed. Seeler then followed the truck back into the right lane. Because Seeler was driving on the shoulder and rumble strips, he re-entered the middle lane. As he did so, he struck Donahue, who was re-striping the newly paved road.

After the accident Seeler was not administered any field-sobriety tests, but he was placed under arrest and taken to a nearby hospital where, pursuant to a warrant, his blood was drawn to test for the presence of alcohol. Three tests were done on two separate blood draws from Seeler (one at 7:55 a.m. and another at 8:25 a.m.). The average of the three tests indicated a blood alcohol content of .16 percent. Using a regression analysis based on the difference between the two blood samples, Dr. Christopher Long, a toxicologist, testified that Seeler's blood alcohol level at the time of the accident was around 0.24 percent—or three times the legal limit of 0.08 percent.

Seeler was indicted in August 2007 and charged with involuntary manslaughter pursuant to section 565.024.1(3)(a). The indictment charged that Seeler "committed the class B felony of involuntary manslaughter in the first degree [when he], while under the influence of alcohol and/or a controlled substance caus[ed] the death of Gavin Donahue by striking him with a motor vehicle while operating a motor vehicle with criminal negligence in that defendant was driving in a close[d] construction zone, thereby leaving said highway's right-of-way, and Gavin Donohue was not a passenger in the vehicle operated by the defendant."

At the beginning of trial, Seeler filed a motion to dismiss the indictment on the ground that the statute is unconstitutionally vague as to whether "leaving a highway's right-of-way" is an element of the offense. The motion was overruled. At the close of the state's evidence, Seeler filed a motion to dismiss the indictment, or to enter judgment of acquittal, arguing that no evidence was produced that he ever left the "right-of-way." The state requested leave to file an information in lieu of indictment to clarify that Seeler was being charged with leaving the open part of the highway, which the court granted. The next day, the information was filed that substituted "defendant was driving in a construction zone and drove into a lane closed to traffic" for the indictment's language of "defendant was driving in a close

[sic] construction zone, thereby leaving the highway's right-of-way." Seeler objected to the substitution as prejudicial.[4]

The jury found Seeler guilty of first-degree involuntary manslaughter and, in accordance with the jury's recommendation the trial court sentenced him to seven years in prison. Seeler appeals.

## The Various Shades of First–Degree Involuntary Manslaughter

Seeler was charged with involuntary manslaughter pursuant to section 565.024, which provides:

1. A person commits the crime of involuntary manslaughter in the first degree if he or she:

(1) Recklessly causes the death of another person; or

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person; or

**(3) While in an intoxicated condition operates a motor vehicle in this state, and, when so operating, acts with criminal negligence to:**

    **(a) Cause the death of any person not a passenger in the vehicle operated by the defendant, including the death of an individual that results from the defendant's vehicle leaving a highway, as defined by section 301.010, RSMo, or the highway's right-of-way; or**

    (b) Cause the death of two or more persons; or

    (c) Cause the death of any person while he or she has a blood alcohol content of at least eighteen-hundredths of one percent by weight of alcohol in such person's blood; . . . .

(Emphasis added).

Seeler was convicted under section 565.024.1(3)(a). A conviction under section 565.024.1(1) or (2) results in a class C felony, while a conviction under section 565.024.1(3)(a), (b) or (c) results in a class B felony.[5] Subdivisions (2) and (3)—quoted above—contain similar language that criminalizes causing the death of another person while intoxicated and acting with criminal negligence. In addition, subdivision (3) paragraphs (a), (b) and (c)—quoted above—list additional circumstances that, when present, raise the offense to a class B felony.

A fair reading of the law—which is not the basis of the indictment—is that the class B felony set forth in section 3 includes causing the death of a person not a passenger in the defendant's vehicle. The decedent may be the driver or passenger in another vehicle, a person standing in the highway, or a person who is struck by the

**4.** The information charged that Seeler "while under the influence of alcohol caused the death of Gavin Donohue by striking him with a motor vehicle when operating a motor vehicle with criminal negligence in that [Seeler] was driving in a construction zone and drove into a lane closed to traffic, and Gavin Donohue was not a passenger in the vehicle operated by [Seeler].

**5.** Section 565.024.2 provides:
Involuntary manslaughter in the first degree under subdivision (1) or (2) of subsection 1 of this section is a class C felony. Involuntary manslaughter in the first degree under subdivision (3) of subsection 1 of this section is a class B felony. A second or subsequent violation of subdivision (3) of subsection 1 of this section is a class A felony. For any violation of subdivision (3) of subsection 1 of this section, the minimum prison term which the defendant must serve shall be eighty-five percent of his or her sentence. Any violation of subdivisions (4) and (5) of subsection 1 of this section is a class B felony.

defendant when the defendant's car leaves the highway.

## The Vagueness Challenge

■ The void-for-vagueness doctrine assures that laws give fair and adequate notice of proscribed conduct and protects against arbitrary enforcement. *State ex rel. Nixon v. Peterson,* 253 S.W.3d 77, 81 (Mo. banc 2008). The distinctions between and among the various shades of involuntary manslaughter are confusing, but the law's proscriptions are understandable. The law is confusing for lawyers and judges to discern the essential elements of class B involuntary manslaughter, but the conduct proscribed is clear enough. The law is confusing, but not vague.

■ Criminal negligence is an ultimate fact that, in a jury trial, must be decided by the jury. *See, e.g., State v. Stone,* 280 S.W.3d 111, 116 n. 3 (Mo.App.2009). A person is criminally negligent "when he fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Section 562.016.5.

■ The state has the burden of proving every element of a crime beyond a reasonable doubt. *State v. Clemons,* 643 S.W.2d 803, 805 (Mo. banc 1983). According to the jury's verdict, the state did prove these elements: that Seeler, while intoxicated, drove his vehicle in a criminally negligent manner and that Gavin Donahue's death resulted. The jury instruction's specification of the manner in which Seeler was criminally negligent is that he drove in a lane closed to traffic. This factual specification is sufficient for the jury, if it so finds, to conclude that Seeler acted with "criminal negligence."

But this specification, as to driving in a lane closed to traffic, came *after* the state had presented its evidence on its factual theory—as specified in the indictment— that Seeler was "driving in a close[d] construction zone, thereby leaving said highway's right-of-way. . . ." Seeler came to trial to defend by showing that he did not leave the highway's right-of-way, and that if he did leave the right-of-way, the choice was not negligent. When the defense challenged the sufficiency of the state's case by arguing that the evidence did not show that Seeler's vehicle had left the highway's right-of-way, the state moved to substitute an information with a different factual specification, a motion that the trial court granted.

## Did the Amendment of the Charge Prejudice the Defense?

■ This Court reviews a trial court's decision to allow an amendment of a charging document for abuse of discretion. *State v. Smith,* 242 S.W.3d 735, 742 (Mo. App.2007). Seeler argues that the trial court erred in granting the state's motion to substitute an information in lieu of the original indictment because it prejudiced his substantial rights by making his prepared defenses inapplicable.

Rule 23.08 allows an information to be amended or substituted for an indictment during the trial. The rule says:

Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:

(a) No additional or different offense is charged, and

(b) A defendant's substantial rights are not thereby prejudiced. No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to

prepare a defense by reason of such amendment or substitution.

■ In this case, the substituted information came within the time to do so under the rule. Seeler concedes that there is no issue as to whether the new information charged an additional or different offense; therefore, this Court must determine whether the trial court's allowing the information in lieu of the indictment prejudiced Seeler's "substantial rights."

■ The test for determining prejudice is whether the planned defense to the original charge still would be available after the amendment and whether the defendant's evidence would be applicable before and after the amendment. *State v. Taylor*, 375 S.W.2d 58, 63 (Mo.1964); *State v. McGinness*, 215 S.W.3d 322, 324 (Mo.App. 2007). If Seeler's defenses were unavailable under the new information, and the evidence he adduced in cross-examination of the state's witnesses was no longer applicable after the information was substituted, he has been prejudiced.

Seeler's defense strategy centered on proving that he did not leave "the highway's right-of-way"[6] as charged in the original indictment. Seeler's defense sought to establish two things: first, that he never left the "right-of-way" of the highway; and second, even if he did leave the "right-of-way," his actions were reasonable and did not amount to criminal negligence. The statute applies only when the defendant leaves a highway as defined in section 301.010.[7] The closed construction zone still would be part of the highway as defined in section 301.010, but is it part of the right-of-way, an undefined term in this context? Seeler's defense was that it was.

Seeler says his defense strategy is apparent in two different lines of questioning prior to the substitution of the information. First, Seeler's counsel questioned witnesses about where Donahue was standing before Seeler's van struck Donahue and where Donahue and Seeler's van were located when Donahue was struck. Seeler focused on this evidence to establish that he was physically on the highway and, therefore, never left the "right-of-way." Second, Seeler's counsel questioned witnesses about the fact that the cars on the road all were driving on the rumble strips and on the shoulder. Seeler focused on this evidence to establish that, if going over the white lines was considered "leaving the right-of-way," every car was doing it and, therefore, his actions were reasonable and not criminally negligent. Seeler argues that the substitution of the information made this information irrelevant.

At the close of the state's evidence, Seeler filed a motion to dismiss, arguing that the state had not established that Seeler had left the highway's right-of-way. The prosecution countered by requesting leave to amend the indictment by excluding the allegation that Seeler left the "right-of-way." The court granted leave to amend by substituting the information in lieu of

---

6. The term "right-of-way" is not defined in the criminal statute. The term "public right-of-way" is defined in section 67.2677(12) regarding video service providers; its definition restates a common understanding of the term: "the area of real property in which a political subdivision has a dedicated or acquired right-of-way interest in the real property, including the area on, below, or above the present and future streets, alleys, avenues, roads, highways, parkways, or boulevards dedicated or acquired as right-of-way and utility easements dedicated for compatible uses."

7. "Any public thoroughfare for vehicles, including state roads, county roads and public streets, avenues, boulevards, parkways or alleys in any municipality."

the indictment and then overruled Seeler's motion to dismiss. Removal of the charge that Seeler left the highway's right-of-way made irrelevant Seeler's defense that he did not leave the right-of-way—a defense that appeared to be proved by evidence of the location of Donahue and of Seeler's van. The amended charge in the information shifted the focus of the evidence to the question of whether Seeler's driving in the center lane was in a lane closed to traffic instead of a right-of-way. Therefore, Seeler's evidence that the center lane was still part of the right-of-way was no longer applicable.

■ The state argues that Seeler's defense that he did not actually leave the "right-of-way" is a technical defense.[8] "Loss of a technical defense is not the type of defense referred to under Rule 23.08." *State v. Endicott*, 881 S.W.2d 661, 664 (Mo.App.1994). The removal of language in the charging document that is unnecessary to the crime charged does not amount to prejudice under Rule 23.08. *State v. Bratton*, 779 S.W.2d 633, 635 (Mo.App.1989). In this case, the indictment treated the allegation as to the highway or its right-of-way as a necessary part of the case, and therefore, Seeler's defense that he did not actually leave the "right-of-way" is not a technical defense.

Seeler, as noted, also argues that section 565.024 is void for vagueness. In rejecting the challenge to the vagueness of the statute, the Court does not read the statute as authorizing the state to shift its factual theory in the midst of a trial. The General Assembly certainly may choose to slice up the prohibition of killing into as many separate scenarios as the mind can imagine. "Thou shalt not kill" suffices as a fundamental religious principle, but the criminal law is not so simple. Imagine, for instance, that a legislator's constituent is killed by an inebriated driver who drives off a highway and strikes him while the constituent is minding his own business. The legislator certainly may persuade his colleagues to enact a slice of a crime of homicide to cover this factual scenario and include an enhanced punishment. See, for instance, section 565.024.1(3), under which Seeler was charged. Indeed, the criminal code collects many such slices enacted over time to respond to the many ways that human beings can cause death or misery. To that point, a fair reading of this provision, as noted, is that it is a class B felony, first-degree involuntary manslaughter, if the defendant causes the death of a person not a passenger in his vehicle or causes the death of two persons, regardless of whether they are his passengers. If he causes the death of one person who is a passenger in his vehicle, it is a class C felony.[9]

The challenge that this cumbersome criminal code poses for the state's prosecutors is to choose the right statutory section that fits the facts of an individual case. In doing so, the prosecution must pick its factual theory and stick with it. To do otherwise may cause "substantial prejudice" to the right of the defendant to present a defense to the offense as charged. Rule 23.08.

### Conclusion

When the state was allowed to amend the indictment by substituting an informa-

---

8. A "technical defense" is a defense that is immaterial or does not affect substantial rights. Black's Law Dictionary 1463 (6th ed.1990).

9. While the statute, as it is written, does tend to place less importance on the death of one passenger—as distinct from the death of one person not a passenger—the enhanced penalty for the deaths of two passengers perhaps shows a legislative purpose to encourage designated drivers to stay sober. Or perhaps to discourage drunks from driving carpools. It is not the courts' role, of course, to second-guess the reasons for these distinctions.

tion in lieu of the indictment, Seeler was prejudiced because the defenses he prepared for trial—which were relevant to the original specification in the indictment—were no longer relevant.

The judgment of the circuit court is reversed, and the case is remanded.

PRICE, C.J., TEITELMAN and STITH, JJ., concur.

RUSSELL, J., dissents in separate opinion filed; BRECKENRIDGE and FISCHER, JJ., concur in opinion of RUSSELL, J.

MARY R. RUSSELL, Judge, dissenting opinion.

I respectfully dissent. I disagree with the majority's conclusion that the defendant was prejudiced when the State amended the language in the charge against him. I would affirm the trial court's judgment.

So long as the defendant properly was charged and convicted, it is not this Court's task to Monday-morning-quarterback the State's decision to charge him with a certain crime or to present to the jury a particular theory of the case. This case involves the serious matter of a young man's death at the hands of a drunken driver; there is no reason to make this sad case into a means for hindsight criticism of the policy considerations and semantics relied on by the legislature in passing a constitutional statute.

## I. There is no "right-of-way" element at issue in this case

The defendant was convicted and sentenced for the class B felony of involuntary manslaughter as set forth under section 565.024.1(3)(a), RSMo Supp.2007.[1] I take issue with those portions of the majority's opinion that suggest that the defendant's conviction under section 565.024.1(3)(a) required the State to prove that the defendant left the highway or its right-of-way. The majority at Page 11 states: "The statute applies only when the defendant leaves a highway ... [; t]he closed construction zone still would be part of the highway as defined in section 301.010, but is it part of the right-of-way, an undefined term in this context?" And at Page 13 it suggests that the issue of whether the defendant left the right-of-way was "a necessary part of the case."

There should be no doubt that leaving the highway or right-of-way is *not* an element of the crime articulated in section 565.024.1(3)(a).[2] The phrase in the statute stating "including the death of an individual that results from the defendant's vehicle leaving a highway ... or the highway's right-of-way" does not outline a required showing for the State's case. Instead, this

---

1. This statute provided in relevant part that a person committed the crime of involuntary manslaughter in the first degree if he or she:

    (3) While in an intoxicated condition operate[d] a motor vehicle in this state, and, when so operating, act[ed] with criminal negligence to:

    (a) Cause the death of any person not a passenger in the vehicle operated by the defendant, including the death of an individual that result[ed] from the defendant's vehicle leaving a highway, as defined by section 301.010, RSMo, or the highway's right-of-way[.]

All statutory references are to RSMo Supp. 2007.

2. A section 565.024.1(3)(a) conviction requires the State to prove: (1) the defendant, while in an intoxicated condition, operated a motor vehicle in this state; (2) when so operating, he acted with criminal negligence; and (3) this criminal negligence caused the death of any person not a passenger in his vehicle. The statute does not require that the State prove a given location of the incident beyond its being "in this State."

language illustrates a type of victim who might be included in the category of "any person not a passenger in the vehicle operated by the defendant." The phrase clarifies that the non-passenger victim of the drunken driver may be a person wholly unconnected to the roadway, much less to the drunken driver.

In the defendant's case, the jury was not required to find that the defendant left the technical bounds of the highway or right-of-way because the facts of this case did not warrant that analysis. Instead, the jury was tasked with determining if the State proved that the defendant: (1) was driving drunk; and (2) while driving drunk, acted with criminal negligence by entering the construction zone and driving in a lane closed to traffic; and (3) this criminal negligence caused the non-passenger victim's death. The majority does not dispute that the State proved each of these elements.

## II. The defendant was not prejudiced

While the majority does not disagree that the State proved each of the elements necessary for the defendant's conviction under section 565.024.1(3)(a), the majority also concludes that the defendant's conviction was invalid. It contends that he was prejudiced when the State was permitted to file an information that removed lan-

guage alleging that he had left the highway's right-of-way.[3] I disagree with the majority's conclusion that the defendant was prejudiced by the filing of the information.

As the majority notes, the trial court's decision to allow the State to file the amended language in the information is reviewed only for an abuse of discretion. An abuse of discretion is found when the trial court's decision is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Fassero*, 256 S.W.3d 109, 115 (Mo. banc 2008). In this case, there was no abuse of discretion because the trial court's decision to permit the State to file the information was logical, reasonable, and carefully made.

At the close of the State's evidence, the defendant moved to dismiss the State's indictment against him, arguing that the State's evidence failed to support its indictment language stating that he had left the highway's right-of-way. The State noted that the instruction in the case would conform to the evidence and offered to file an information in lieu of the indictment that would correct the defendant's misunderstanding that the charges against him hinged on his leaving the right-of-way.

---

3. The original indictment stated that the defendant:

   [C]ommitted the class B felony of involuntary manslaughter in the first degree ... [when he], while under the influence of alcohol and/or a controlled substance caused the death of Gavin Donohue by striking him with a motor vehicle when operating a motor vehicle with criminal negligence in that defendant was *driving in a close[d] construction zone, thereby leaving said highway's right of way and, Gavin Donohue was not a passenger in the vehicle operated by the defendant.*

   (emphasis added).

   In the information substituted in lieu of the indictment, the State altered its theory of how the defendant acted with criminal negligence:

   [C]ommitted the class B felony of involuntary manslaughter in the first degree ... [when he], while under the influence of alcohol caused the death of Gavin Donohue by striking him with a motor vehicle when operating a motor vehicle with criminal negligence in that defendant was *driving in a construction zone and drove into a lane closed to traffic,* and Gavin Donohue was not a passenger in the vehicle operated by the defendant.

   (emphasis added).

The defendant complained that he had prepared his defense to focus on his having not left the highway's right-of-way. But the trial court responded that the defendant had "always been on notice that the charge was that he was driving while intoxicated, and with criminal negligence, and caused the death of the victim ... by driving in a closed construction zone." It noted that the State's proposed changes to the indictment did not change the facts of the case and "[did]n't cause any prejudice." Immediately after the trial court denied his motions, the defendant began the presentation of his evidence. At no point during the trial did he request a continuance in light of the State's amended language in the information.

Rule 23.08 provides in relevant part: "Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if: (a) [n]o additional or different offense is charged, and (b) [the] defendant's substantial rights are not thereby prejudiced." I agree with the majority that, consistent with the allowances of Rule 23.08, nothing in the information altered the crime with which the defendant was charged.[4] Unlike the majority, however, I do not find that the defendant's "substantial rights" were prejudiced.

The majority contends that the defendant suffered Rule 23.08 prejudice because the removal of the right-of-way language in the information rendered irrelevant his planned defenses centering on his having remained on the highway's right-of-way. I disagree with the majority's conclusion that the defendant's loss of his right-of-way defense was more than the mere loss of a technical defense. The majority wrongly assumes that the indictment treated the right-of-way allegation as "a necessary part of the case." The State's amended language in the information had no impact on the elements of the crime that the State was required to prove: (1) the defendant, while in an intoxicated condition, operated a motor vehicle in this state; (2) when so operating, he acted with criminal negligence; and (3) this criminal negligence caused the death of any person not a passenger in his vehicle. Because the issue of whether the defendant left the right-of-way was immaterial to the elements the State had to prove for his conviction, the right-of-way issue was merely a technical defense. The defendant suffered no violation of Rule 23.08 when this technical defense became unnecessary after the information was filed. *See State v. Endicott,* 881 S.W.2d 661, 664 (Mo.App. 1994).

I also disagree with the majority's finding that the defendant suffered Rule 23.08 prejudice because the amended language in the information "shifted the focus of the evidence." *State v. Taylor,* 375 S.W.2d 58, 63 (Mo.1964), held that "[t]he test of prejudice is whether a defense under the charge as originally made would be equally available after the amendment and whether defendant's evidence would be equally applicable after as well as before the amendment." Unlike the majority, however, I would not extend *Taylor* to find that the defendant was prejudiced when he was left without a reason to raise defenses that were irrelevant to the elements of the crime charged. The defendant suffered no Rule 23.08 prejudice when his anticipated argument to the jury was altered, as he was not prejudiced by the inability to argue an unnecessary fact. *See State v. Bratton,* 779 S.W.2d 633, 635 (Mo.App.

---

4. Under both the indictment and the information, the defendant's crime fell under the provisions of section 565.024.1(3)(a), as the victim of the involuntary manslaughter clearly was alleged to be a person "not a passenger" in the defendant's vehicle.

1989) (noting that there can be no prejudice under Rule 23.08 when the language removed from the charging document is unnecessary to the crime charged).[5]

The amended language in the information did not confront the defendant with additional factual allegations. *See id.* The information removed the right-of-way allegation and simply rephrased the allegation that he was driving in a "close[d] construction zone" to the equivalent allegation that he was driving "in a construction zone and drove into a lane closed to traffic." In my view, the defendant's non-right-of-way defenses remained relevant after the information was filed. In addition to arguing that he never left the right-of-way, the defendant also argued that, even if he had left the right-of-way, his actions were reasonable and not criminally negligent. He argued that he did not act with criminal negligence because the construction zone lane closures were confusing and other drivers were driving similarly to him. He further asserted in his defense that he was not intoxicated at the time he struck the victim with his vehicle. The defendant's intoxication defense and his defense that he did not act with criminal negligence were still available to him after the information was substituted in lieu of the indictment.

Rule 23.08 permits alterations in the charge language "at any time before verdict or finding," which clearly contemplates that the charge language may need to be altered—and the defendant's defense may need to be reconsidered accordingly—at a time past the State's presentation of the evidence. The defendant's position in this case is, in essence, an argument that Rule 23.08's time limitation should be read as "at any time before the defendant's counsel prepares his trial notebook." It seems disingenuous to allow the defendant to claim that he was prejudiced substantially by the amended language in the information when, even though he had notice that he should alter his defense strategy, he did nothing to bolster his defenses to address the State's presented evidence. He complains that he would have cross-examined the State's witnesses differently, but he fails to explain why he did not have adequate time to recall those witnesses during his presentation of evidence.

Contrary to the majority's findings, the defendant suffered no Rule 23.08 prejudice. The trial court should not be convicted of abusing its discretion for reaching that reasonable conclusion.

### III. Conclusion

For the foregoing reasons, I would affirm the trial court's judgment.

---

5. The majority cites no persuasive authority supporting its conclusion that the defendant was prejudiced for Rule 23.08 purposes because he was left without a reason to counter an irrelevant issue at trial.