

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD77585 |
| | ) | |
| v. | ) | OPINION FILED:  December 8, 2015 |
| | ) | |
| ANDREW CANADAY, | ) | |
| | ) | |
| Appellant. | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Patrick W. Campbell, Judge

Before Division Four:  Alok Ahuja, Chief Judge, Presiding, Gary D. Witt, Judge and
Kathleen A. Forsyth, Special Judge

## INTRODUCTION

Following a bench trial, Andrew Canaday ("Canaday") was convicted in the Circuit Court of Jackson County of one count of statutory rape, in violation of section 566.032,[1] one count of child molestation in violation of section 566.067 and one count of intentionally exposing another to the HIV virus[2] in violation of section 191.677.  The trial court sentenced Canaday to life in prison on the first count and to fifteen years on each of the remaining counts, to run concurrently with the life sentence.

---

[1] All statutory references are to RSMo 2000 cumulative as supplemented unless otherwise noted.
[2] Human Immunodeficiency Virus.

On direct appeal, Canaday argues that the trial court erred in overruling his motion for acquittal because (1) he was prejudiced when the court allowed the State to amend the factual basis for the child molestation charge at the close of the evidence, and (2) there was insufficient evidence that he had sexual intercourse with the victim such that the findings of guilt as to the statutory rape and intentional HIV exposure charges were erroneous. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Viewed in the light most favorable to the verdict,[3] the following evidence was adduced at trial:

On June 1, 2012, seven-year-old A.B.[4] was playing hide-and-seek outside her home with other children. Canaday lived across from A.B. As A.B. and another child sat near Canaday's home, Canaday grabbed A.B. and took her inside his house to the bedroom on the second floor. Canaday removed A.B.'s underwear, touched her vagina and then penetrated her vagina with his penis.

Canaday's roommate, Dominique Darden ("Darden"), returned home from running errands. Canaday met her halfway up the stairwell wearing a robe. He then asked her to leave again and get a pizza. Darden came back about ten or twenty minutes later, to find children gathered in front of her residence, one of whom told her excitedly that Canaday had "touched the little girl." Darden found A.B. up the street crying hysterically and hugging a telephone pole. A.B. told her that Canaday touched her vagina.

---

[3]*State v. Brooks*, 446 S.W.3d 673, 674 (Mo. banc 2014) (citation omitted).
[4]We refer to the child victim using only her initials to protect her privacy. § 566.226.

Latasha Lambert's ("Lambert") daughter, who had been playing outside with A.B., came inside hysterical and out of breath. Lambert went outside and found A.B. up the street crying. A.B. told Lambert that Canaday put his penis in her vagina and that he touched her vagina. A.B. also stated that Canaday gave her a dollar so that she would not tell anyone. Lambert called 911.

Officer Joe Smith ("Officer Smith"), along with three other officers, responded to the scene. A.B. told Officer Smith that Canaday "put his private part inside of her private part." Officers located Canaday walking away from the neighborhood and placed him under arrest. A.B. was then taken by ambulance to Children's Mercy Hospital where she was examined by Lisa Robinson ("Robinson"), a certified Sexual Assault Nurse Examiner. A.B. had bruising at the base of her hymen consistent with penile penetration.

When police searched Canaday's residence, they found A.B.'s underwear hidden under the mattress on Canaday's bed. The police also found a pair of men's boxer shorts underwear on the floor. There was a mixture of DNA[5] on A.B.'s underwear and the major profile matched Canaday's DNA. There was also a mixture of DNA identified on the men's boxer shorts; the major profile matched Canaday's DNA and the minor profile matched A.B.'s DNA.

A.B. was interviewed at the Child Protection Center by Brandy Hodgkin ("Hodgkin"). A.B. stated that Canaday put "the thing that you pee with" in her vagina. A.B. testified at trial that Canaday touched her "front private" with his hand. A.B. further

---

[5]The type of DNA found is sometimes referred to as "touch" DNA which can be obtained from skin cells as opposed to bodily fluids. This type of DNA is very specific to an individual, with an expected frequency of 1 in 460 billion in unrelated persons.

3

testified that Canaday's "private part, what he pees out of," touched the inside of her vagina. On cross-examination, A.B. testified that Canaday tried to "put his private part into [her] private part," but "it didn't happen".

Sharon Kathrens ("Kathrens"), a registered nurse at the infectious disease clinic at Truman Medical Center, testified that she had been treating Canaday for HIV since May of 2004.

At the close of all the evidence, the State moved to amend the child molestation count by changing the factual allegation of how Canaday committed the crime. The original charge contained the factual allegation that he had committed child molestation by placing his mouth on A.B.'s breast; the amended charge was that he committed the same crime by placing his hand on her vagina. Over Canaday's objection, the court allowed the amendment.

The court found Canaday guilty on all three counts. On May 21, 2012, the court sentenced Canaday, whom it found to be a prior and persistent offender, to concurrent sentences of life in prison for statutory rape, fifteen years for child molestation in the first degree, and fifteen years for recklessly exposing another person to HIV infection. This appeal follows.

**Point I**

In his first point, Canaday argues that the trial court erred when it allowed the State to amend Count II, the charge of child molestation after the close of all evidence "in that [his] substantial rights were prejudiced because his planned defense and evidence was no longer available after the amendment."

4

## Standard of Review

"This Court reviews a trial court's decision to allow an amendment of a charging document for abuse of discretion." *State v. Seeler*, 316 S.W.3d 920, 925 (Mo. banc 2010) (citing *State v. Smith,* 242 S.W.3d 735, 742 (Mo. App. S.D. 2007)). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Fassero*, 256 S.W.3d 109, 115 (Mo. banc 2008) (internal quotations and citations omitted).

## Analysis

At the close of all of the evidence, but just before closing arguments, the State moved to amend the factual allegation supporting Count II and, over Canaday's objection, the court granted the motion to amend. Rule 23.08[6] allows a charging document to be amended or substituted during the trial. The rule provides:

> Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:
>
> (a) No additional or different offense is charged, and
>
> (b) A defendant's substantial rights are not thereby prejudiced.
>
> No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

Canaday concedes that the amendment did not charge a different offense under Rule 23.08(a); indeed, the offense of child molestation in the second degree may be

---

[6]All rule references are to Missouri Court Rules (2015).

committed by many different means, including touching the victim's vagina or female breast. Canaday alleges error instead under Rule 23.08(b), arguing that he was prejudiced by the amendment, which changed the factual allegation by which the offense was alleged to have been committed without charging a different offense. *See State v. Folson,* 197 S.W.3d 658, 661 (Mo. App. W.D. 2006) (citation omitted). Canaday argues that he was prejudiced by the amendment as the change affected his defense to the charge, and therefore the trial court erred under subsection (b) of the rule. We agree.

The test for prejudice is whether 1) the planned defense to the original charge would still be available after the amendment, and 2) whether the defendant's evidence would be equally applicable after, as well as before, the amendment.[7] *Seeler,* 316 S.W.3d at 926; *State v. Taylor*, 375 S.W.2d 58, 63 (Mo. 1964) (setting forth the test for prejudice following an amendment).

"A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." § 566.067.1. "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010(3).

---

[7]Canaday does not argue in his brief that this test applies to evidence or planned defenses applicable to other counts other than the one which was amended. Thus, we focus our analysis on the evidence and defenses applicable only to the charge which was amended.

6

With regard to Canaday's planned defense to the child molestation count, his counsel, in explaining how Canaday was prejudiced, argued the following to the trial court:

> [M]y whole trial strategy, the whole entire case, has been that this is a case of digital penetration, not a case of statutory rape.[8] Why would I concede that? Because I know that statutory rape, child molestation, is not a lesser included offense. So they have never charged anything to do with digital penetration. So if I argue digital penetration the whole entire way through the trial and argue that there is no statutory rape, I know that they can't amend down to molestation in regards to count one, because it's not a lesser included offense and there is case law on point that says they can't do that. The reason we are prejudiced is because all of our lines of questioning and the whole entire trial strategy we've had throughout this trial has to do with that line of defense. Now at the end of trial, when evidence is closed, they decide to amend. All the witnesses are gone. I wasn't prepared to ask those questions or to close on that manner or to cross-examine people in regards to that count. We were doing only a statutory rape charge. I think that's why it causes prejudice. It violates my client's due process rights and it also, I mean, it messes up our trial strategy and I think that's why it's prejudicial.

In considering whether Canaday would be prejudiced by the amendment, the court stated:

> [I]t's not as if the Defendant has not been on notice since the case began that there were allegations having to do with the girl's vagina. This is not a case where the only thing that had ever been mentioned was, so to speak, above the waist, the lips, mouth on the breast, and now they want to amend. I mean, this whole case has been directed by-- I don't want to say the whole case, but certainly a significant portion of the case has been about Count I and the statutory rape charge. So I don't find that there is prejudice to the Defendant with regards to preparation.

---

[8]Statutory rape is codified in section 566.032, which states as follows: "1. A person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old. 2. Statutory rape in the first degree or an attempt to commit statutory rape in the first degree is a felony . . . ." Sexual intercourse is defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." § 566.010(4).

7

The court then granted the State's motion to amend the information. As noted above, in order for there to be prejudice, the "planned defense to the original charge" must become unavailable and the evidence "no longer applicable after the information was substituted." *Seeler*, 316 S.W.3d at 926. Canaday argues that his planned defense to the child molestation charge was that "he never touched [the victim's] breast." He then argues that the defense of not touching her breast "in turn shaped his defense" to the statutory rape and intentional exposure to HIV charges. Indeed, he argues that "every question that defense counsel asked was geared toward that defense and that strategy."

In short, Canaday argues that his defense to the child molestation charge was that he never touched the victim's breast and his defense to the statutory rape charge and exposure to HIV charges was that he penetrated her vagina with his finger but not with his penis. Thus, he argues that he was not guilty of statutory rape. Likewise, he argues that if there was only digital penetration, there would be no exchange of fluids and he could not be convicted of exposing A.B. to HIV. By amending the child molestation charge to allege digital penetration, he lost the defense he intended to use as to that charge and had to, in fact, admit to the child molestation charge in order to use his planned defense to the remaining two counts.

Canaday contends that the facts here are analogous to those of *State v. Seeler*, requiring reversal. 316 S.W.3d 920. In *Seeler*, "the indictment charged that Seeler acted while under the influence of alcohol and/or a controlled substance causing the death of Gavin Donahue by striking him with a motor vehicle while operating a motor vehicle with criminal negligence in that defendant was driving in a closed construction zone,

8

thereby leaving said highway's right-of-way . . . ." *Id.* at 923. Seeler was charged with the class B felony of involuntary manslaughter which is defined as to "cause the death of any person not a passenger in the vehicle operated by the defendant, including the death of an individual that results from the defendant's vehicle leaving a highway . . . or the highway's right-of-way . . . ." *Id.* at 924 (citing § 565.024.1(3)(a)). All of Seeler's evidence was geared towards proving that he never left the highway or the highway right-of-way. "Seeler came to trial to defend by showing that he did not leave the highway's right-of-way, and that if he did leave the right-of-way, the choice was not negligent." *Seeler*, 316 S.W.3d at 925. "After the close of the state's evidence, the defense moved for acquittal because the evidence did not show that Seeler's car had left the highway's right-of-way." *Id.* at 922. In response, the State requested leave to amend the information by replacing "leaving the highway's right-of-way" with "drove into a lane closed to traffic." *Id.* Leaving the right-of-way was "a necessary part of the case."[9] *Id.* at 927. Seeler's defense had been that although he did drive into a lane closed to traffic (the center lane), the center lane was still within the highway's right-of-way due to other lanes being closed for construction.

> The amended charge in the information shifted the focus of the evidence to the question of whether Seeler's driving in the center lane was in a lane closed to traffic instead of a right-of-way. Therefore, Seeler's evidence that the center lane was still part of the right-of-way was no longer applicable.

---

[9]Another point raised in *Seeler* was whether a closed lane would still be considered the right-of-way, as that term is undefined in the statute. Further, the State argued that Seeler's defense of staying within the right-of-way was merely a technical defense. The Court resolved the issue by stating that since "the indictment treated the allegation as to the highway or its right-of-way as a necessary part of the case," his defense was not a technical defense. 316 S.W.3d at 927. A technical defense is one that "is immaterial or does not affect substantial rights." *Id.* at 927 n.8.

*Id.*

Staying within the right-of-way, then, was central to Seeler's defense. At the time the State amended the information, the evidence had been closed and the witnesses were gone. The State had chosen its factual theory, and the defense had developed and presented its theory accordingly. The defense in *Seeler* was not a general one but rather relied quite heavily and quite specifically on the way the State had worded its charging instrument. This was key in *Seeler*, as is evident in the Court's finding that the defendant was prejudiced: "the prosecution must pick its factual theory and stick with it." *Id.* Therefore, at that late juncture, there was no way to view the facts in the amended information as a mere "technical defense," which the *Seeler* Court noted is defined in part as one that is "immaterial or does not affect substantial rights." *Id.* at 927, n.8 (quoting BLACK'S LAW DICTIONARY 1463 (6TH ED. 1990)).

Here, amending the factual basis for the charge of child molestation from molesting by placing his mouth on A.B.'s breast to molesting by touching her vagina with his hand significantly changed the factual support for the charge, making Canaday's line of questioning throughout trial inapplicable because no witness had ever testified that Canaday touched A.B.'s breast with either his hand or his mouth. Indeed, the trial court recognized this and stated that "going from placing a mouth on a breast to a hand on or in the victim's vagina" is a "significant change." Without evidence in any report or from any witness that Canaday had touched A.B.'s breast, the charge of molestation by

10

touching the breast simply could not be proven.[10]  Knowing that there was an absence of such testimonial evidence, Canaday argued that although damage to A.B.'s vagina was found, the damage was caused by digital penetration rather than penile penetration, making the evidence insufficient to prove the statutory rape charge.  Being aware that digital penetration was not a lesser-included charge of statutory rape, Canaday felt it was a safe, strategic decision to essentially admit digital penetration, as opposed to penile penetration.  Because digital penetration was not charged by the State, this defense was applicable to all three counts.  By changing the factual support for the child molestation charge to digital penetration, Canaday was left with no defense to the charge of child molestation.  In other words, his planned defense became inapplicable.  This is confirmed by the fact that, after the amendment was allowed, Canaday conceded the child molestation charge.  Under *Seeler*, changing the key facts of the information after the State has presented its case, the defense has relied on the information with a specific defense, the evidence has been submitted, and the witnesses gone, results in prejudice.  The summary sentence from *Seeler* is applicable here: Canaday "was prejudiced because the defenses he prepared for trial—which were relevant to the original specification in the indictment—were no longer relevant." *Id.* at 927-28.

---

[10]The State argues that because there was nothing in any of the discovery which reflected that Canaday had touched the child's breast, with his mouth or otherwise, Canaday was not prejudiced in that he should have predicted that the State would amend the charge to conform to the facts adduced in pretrial discovery (i.e. that he touched her vagina with his hand, rather than her breast with his mouth).  It was the State who investigated the charge, it was the State who brought the charge, it was the State who had the burden of proving the charge it brought, beyond a reasonable doubt, and it was the State's sloppiness which resulted in it filing a charge for which there was no evidence anywhere in its file to support.  Yet, the State wishes to fault Canaday for not predicting the State's incompetence.

11

Because Canaday's planned defense to the child molestation charge was no longer available after the amendment, we find an abuse of discretion in the trial court's ruling allowing the charge to be amended after the close of all of the evidence.[11]  "Trial court error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial."  *State v. Williams*, 420 S.W.3d 713, 721 (Mo. App. W.D. 2014) (citation omitted).  In so holding, we find that there was a "reasonable probability" that, had the charge not been amended, Canaday could not have been convicted of child molestation as there was absolutely no evidence produced at trial that he touched the victim's breast with his mouth or with his hand.  Thus, we agree with Canaday that he was prejudiced by the timing together with the content of the amendment.  Point I is granted.

## Point II

In his second point, Canaday contends that the evidence was insufficient that he had sexual intercourse with the victim, thus making his convictions of statutory rape and intentionally exposing another to HIV erroneous.

## Standard of Review

Appellate review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence from which a reasonable fact-finder could have found each element of the crime beyond a reasonable doubt.  *State v. Hunt*, 451 S.W.3d 251, 257 (Mo. banc 2014) (citation omitted).  This court does not reweigh the evidence but, rather, considers it in the light most favorable to the verdict and grants the State all

_____

[11]Because Canaday has admitted before this court that the "credible evidence against [him] was that he had inserted his finger in [victim's] vagina," there is no dispute as to whether the amendment comported with the evidence adduced at trial.

12

reasonable inferences. *Id.* (citation omitted). Contrary evidence and inferences are disregarded. *Id.* (citation omitted). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Zink v. State,* 278 S.W.3d 170, 192 (Mo. banc 2009). The fact-finder determines the credibility of witnesses, resolves conflicts in testimony, and weighs the evidence. *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010) (citation omitted).

## Discussion

Canaday argues that the trial court erred when it overruled his motion for acquittal at the close of evidence because there was insufficient evidence to convict him of statutory rape and intentional exposure to HIV. He claims that there was no physical evidence presented that he had sexual intercourse with the seven-year-old victim such that he should not have been convicted.

> Generally, [our] review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable [fact-finder] to have been convinced of the defendant's guilt beyond a reasonable doubt. This is not an assessment of whether [we] believe[] that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. . . . When reviewing the sufficiency of evidence supporting a criminal conviction, [we do] not act as a 'super juror' with veto powers, but give[] great deference to the trier of fact.

*State v. Nash*, 339 S.W.3d 500, 508-09 (Mo. banc 2011) (citations and internal quotation marks omitted).

The trial court heard testimony from four witnesses who were among the first to have contact with A.B. within minutes of the assault. The witnesses were Canaday's

13

roommate, Darden, who was first to find A.B. hugging a telephone pole and crying hysterically; A.B.'s adult sister-in-law, Lambert, who was next to see A.B. while she was being brought back home by Darden; A.B.'s mother, Taylor, who immediately came home from work after receiving a call from Lambert; and Officer Smith, who was the first policeman to have spoken with A.B. after arriving on the scene. All testified that A.B. told them that Canaday had touched her vagina or put his penis inside of her vagina. The victim herself testified that Canaday put his penis inside of her vagina. Even though on cross-examination A.B's testimony changed to say that his penis was next to her vagina but not inside of it, the fact finder is free to believe either account.

Eight other witnesses testified regarding evidence found at the crime scene and subsequent interviews with A.B., all of which was consistent with Canaday's penis having entered her vagina, even if slightly. Certainly the evidence of bruising at the base of A.B.'s hymen supports an inference of penetration.

Canaday further argues that, absent sufficient evidence of penetration of A.B.'s vagina by his penis, there is insufficient evidence to support his conviction under Count III of intentional exposure to another to HIV. Canaday, however, makes no argument that, *with* evidence of penile penetration of A.B.'s vagina, while knowing he was HIV positive, the evidence would be insufficient to support a conviction under Count III. Indeed, having intercourse while knowing you are infected with HIV and not informing even a consenting partner about the infection, are the only two elements required to prove intentional exposure. *State v. Wilson*, 256 S.W.3d 58, 64 (Mo. banc 2008) (*abrogated on other grounds*). "The state does not have to prove that [a defendant] purposely caused his

14

semen to come into contact with [victim]." *Id.* This is consistent with the statute's own admonition that the wearing of a condom (thereby potentially preventing an exchange of bodily fluids) is not a defense to the charge. § 191.677.4. In other words, Canaday's knowledge that he was HIV positive as he forced his penis into the young victim is sufficient to support a fact finder's conclusion that Canaday knowingly exposed A.B. to HIV.

Because there was sufficient evidence before the trial court that Canaday had penetrated A.B. with his penis and that A.B. was less than fourteen years of age, there was sufficient evidence before the court to convict him of statutory rape. Likewise, because the court found sufficient evidence that, knowing he was HIV positive, a penetration with his penis had occurred, the conviction of intentional exposure to HIV is also founded on sufficient evidence. This point is denied.

## CONCLUSION

The judgment of the trial court is affirmed as to Counts I and III, statutory rape and intentional exposure to HIV. The court's judgment and sentence is reversed as to Count II, child molestation, because the amendment at the close of evidence significantly changed the factual basis for the charge such that Canaday was prejudiced.[12]

_____
Gary D. Witt, Judge

All concur.

_____

[12]Because the sentence as to Count II was concurrent with the sentences for the other offenses, we trust that the State will seriously consider the trauma of another trial on the victim before choosing to retry Canaday on this count.

15