

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED110467 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| v. | ) | 20JE-CR02088-01 |
| | ) | |
| CHRISTOPHER ROBERT SOKOLIC, | ) | Honorable Joseph A. Rathert |
| | ) | |
| Appellant. | ) | Filed: February 7, 2023 |

Christopher Sokolic appeals the judgment convicting him of one count of murder in the first degree, section 565.020, RSMo 2016,[1] and sentencing to life in prison without the possibility of parole. Sokolic argues the circuit court erroneously overruled his motion for judgment of acquittal because there was insufficient evidence of deliberation. We affirm.

## Factual and Procedural Background

Viewed in the light most favorable to the verdict, the relevant evidence is as follows.[2] On the morning of May 25, 2020, Sokolic messaged Alexandria Ayers, a friend with whom he had dated on-and-off, asking her to meet up so he could tell her something. He contacted Ayers repeatedly, sometimes sending multiple messages before she could respond. He said he was going

---

[1] All statutory citations are to RSMo 2016.
[2] *State v. Stewart*, 560 S.W.3d 531, 532-33 (Mo. banc 2018) (holding the evidence is viewed in the light most favorable to the verdict).

to be on the "six o'clock news," that he needed to "get his head straightened out," and that if Ayers did not respond, she would never hear from him again. While Sokolic was prone to "dramatic" behavior, Ayers testified his messages that morning were not typical. Ayers finally agreed to meet him at a park near her subdivision.

Sokolic arrived around noon, hugged Ayers, jumped into the nearby creek and stated he wanted to take "one last swim." When he got out of the water, he told Ayers he would be back, and then left in a white Chevy sedan driven by Zachary Tripp.

Sokolic and Tripp returned approximately thirty minutes later. Ayers got into the back passenger seat. Sokolic was in the front passenger seat. Tripp was driving. They decided to go to Sokolic's grandfather's house, a drive of approximately ten minutes. When they arrived, Sokolic instructed Tripp to leave the main road to the house and drive behind a barn. Ayers testified Sokolic "had asked [Tripp] to pull up, like, halfway down or halfway behind the barn because there was some stuff that he wanted to get that was in the trunk that he didn't want anyone seeing." Ayers then testified "we kind of stopped and sat there for a second."

Once the car was behind the barn, Sokolic began to stab Tripp. From the rear passenger seat, Ayers witnessed Sokolic stab Tripp multiple times "in the chest, and then when his head dropped, in the back of the neck." Sokolic exited the vehicle and began to walk toward the driver's side. Ayers unlocked the car door, exited the vehicle, and fled. Video surveillance from a nearby building showed the white sedan drive behind the barn, with Ayers running into view approximately 30 seconds later. Ayers ran until she found a nearby residence, where a friend picked her up and the police were called.

The investigating officers found Tripp lying face down on the ground about twenty-five feet behind the barn. Tripp's upper body and head were saturated with blood. A pocketknife in

the open, locked position was found lying in plain view next to Tripp's body. Sokolic was not present at the scene.

The officers also observed the white sedan was approximately thirty feet from Tripp's body. One of the officers testified the soft ground showed "marks in the grass where the tires had spun," indicating the vehicle had been "under heavy acceleration." The tire tracks showed the vehicle backed away from the body and then changed direction to proceed forward before being stopped by a bush. There was a large amount of blood in the vehicle, as well as on both the passenger and driver's side doors.

The medical examiner performed an autopsy and identified twenty-seven stab wounds to Tripp's head, neck, chest and back. These wounds were on the front, back, right, and left sides of Tripp's body. The medical examiner also identified nine cut wounds on Tripp's head, neck, right shoulder, hand, and upper left extremity. Several of the stab wounds punctured Tripp's chest cavity. Tripp also sustained puncture wounds to his jugular vein and carotid artery.

On May 26, 2020, at approximately 12:30 a.m., Sokolic was arrested at his mother's house. While being transported to the police station, he asked the officer if Ayers was going to speak with investigators about the murder. The officer informed him Ayers was being cooperative with the investigation. Sokolic replied "she's going to talk," and then put his head down.

The State charged Sokolic with murder in the first degree and armed criminal action. The case proceeded to a jury trial. At the close of the State's case, the circuit court overruled Sokolic's motion for judgment of acquittal. The jury returned a verdict finding him guilty of murder in the first degree and armed criminal action. At sentencing, the State dismissed the armed criminal action charge. The circuit court entered a judgment convicting Sokolic of murder in the first degree and sentenced him to life in prison without the possibility of parole.

Sokolic appeals, claiming the circuit court erred in overruling his motion for judgment of acquittal because "the evidence failed to prove that [he] caused the death of Zachary Tripp after deliberation."

**Standard of Review**

"We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. Bennish*, 479 S.W.3d 678, 684–85 (Mo. App. E.D. 2015). An appellate court's "review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022); *see also Jackson*, 443 U.S. at 319 (holding "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Minor,* 648 S.W.3d at 736. This Court "does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (internal quotation omitted).

**Analysis**

The State must prove every element of a crime charged beyond a reasonable doubt. *State v. Seeler*, 316 S.W.3d 920, 925 (Mo. banc 2010). The elements of murder in the first degree are that a person: (1) knowingly (2) caused the death of another person (3) after deliberation on the matter. *State v. Tisius*, 92 S.W.3d 751, 764 (Mo. banc 2002); Section 565.020.1. Sokolic argues

4

the State failed to prove deliberation, a necessary element of the crime of murder, because the time was "simply too short" and there was "no evidence" of deliberation.

*Time*

Sokolic's argument there was insufficient time to deliberate is foreclosed by the statutory definition of "deliberation" and the relevant case law. Deliberation is "cool reflection for any length of time no matter how brief[.]" Section 565.002(5). "Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004) (internal quotation omitted). "Deliberation is not a question of time—an instant is sufficient—and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). The fact Sokolic attacked Tripp suddenly does not preclude a finding of deliberation. A reasonable juror could conclude Sokolic had ample opportunity to terminate the attack during the time he asked Tripp to drive behind the barn and proceeded to stab him twenty-seven times.

*Evidence of deliberation*

The argument there was "no evidence" of deliberation also lacks merit. "Ordinarily deliberation is proved through evidence of circumstances surrounding the killing." *State v. Rousan*, 961 S.W.2d 831, 841 (Mo. banc 1998); *see also State v. Perkins*, 600 S.W.3d 838, 847 (Mo. App. E.D. 2020) (noting deliberation may be proven with indirect evidence and reasonable inferences from the circumstances). There is sufficient evidence in this case for a reasonable jury to conclude Sokolic acted with deliberation.

First, deliberation "can be inferred from the use of a deadly weapon on some vital part of the victim's body." *State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021). The inference of

5

deliberation is strengthened when there is evidence the defendant inflicted "multiple wounds or repeated blows." *State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002) (holding that evidence the defendant stabbed the victim 21 times supported an inference of deliberation).[3] Sokolic inflicted twenty-seven stab wounds to Tripp's head, back, neck, and chest. Deliberation can be "readily inferred from the … 27 stab wounds to a vital part of the body inflicted by a deadly weapon." *State v. Hurt*, 668 S.W.2d 206, 215 (Mo. App. S.D. 1984).

Second, instead of proceeding to Sokolic's grandfather's house as planned, Sokolic directed Tripp to drive behind the barn, under the guise of needing to retrieve something from the trunk. Rather than retrieving something from the trunk, Sokolic commenced his attack. A reasonable jury could infer his deception is consistent with a deliberate plan to induce Tripp to drive behind the barn so he could more readily conceal the attack.

Third, "[a]n inference of deliberation can also be strengthened by … flight without providing aid to the victim." *State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021); *see also State v. Oldham*, 642 S.W.3d 350, 354 (Mo. App. S.D. 2022). Here, there was evidence that after the attack, Sokolic exited the vehicle and walked to the driver's side while Ayers ran to safety. Additionally, the tire tracks showed the vehicle backed up and then traveled forward under heavy acceleration before getting "hung up" on a bush and stopping approximately thirty feet away from

---

[3] Missouri courts have consistently held that repetitive attacks with a deadly weapon support an inference of deliberation. *See State v. Glass*, 136 S.W.3d 496, 514 (Mo. banc 2004) (noting "[d]eliberation may also be inferred when there are multiple wounds or repeated blows"); *Tisius,* 92 S.W.3d at 764 (noting deliberation may be inferred from "multiple wounds, or repeated blows"); *State v. Sandles*, 740 S.W.2d 169, 177-78 (Mo. banc 1987) (holding 20 stab and slash wounds supported a reasonable inference of deliberation); *State v. Shaddox*, 598 S.W.3d 691, 696 (Mo. App. S.D 2020) (internal quotation omitted) (noting "evidence of multiple stab wounds [or] repeated blows" may support an inference of deliberation); *State v. Moore*, 949 S.W.2d 629, 632 (Mo. App. W.D. 1997) (holding "[n]umerous cases support the prosecutor's argument that shooting [the victim] more than once indicates there was time for deliberation between shots"); *State v. Barnes*, 740 S.W.2d 340, 344 (Mo. App. E.D. 1987) (noting "[d]eliberation has been inferred from evidence of multiple wounds"); *State v. Dickson*, 691 S.W.2d 334, 339 (Mo. App. E.D. 1985) (holding the fact the defendant inflicted "12 or 13 stab wounds" supported an inference of deliberation).

Tripp's body. Sokolic was not present when the officers arrived, and he left Tripp's body lying by the road, face down and saturated with blood. These facts indicate Sokolic fled the scene without rendering aid and further strengthen the inference of deliberation.

Finally, a defendant's statements prior to the commission of the crime also support an inference the defendant acted with a culpable mental state. *See State v. Meidle*, 202 S.W.2d 79, 82 (Mo. 1947) (holding the defendant's prior statements were "relevant and admissible to prove the existence of a design and state of mind from which defendant's act of shooting proceeded, and supports the inference of defendant's criminal purpose or intent in firing the fatal shot.").[4] On the morning of the murder, Sokolic told Ayers he needed to tell her something to clear his mind or she would never hear from him again. Sokolic then said she would see him on the six o'clock news. Within an hour of the murder, Sokolic told Ayers he jumped in the creek to take "one last swim." Sokolic's statements further support the inference that when he stabbed Tripp twenty-seven times after telling him to drive behind the barn, he did so deliberately, after a period of "cool reflection for any length of time no matter how brief[.]" Section 565.002(5).

---

[4] *See also State v. Skillicorn*, 944 S.W.2d 877, 895 (Mo. banc 1997) (*overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885 (Mo. banc 2008) (holding deliberation may be inferred from the defendant's statements implying a plan to inflict harm)); *State v. Dalton*, 433 S.W.2d 562, 564 (Mo. 1968) (holding a defendant's statements may be "relevant and admissible to prove the existence of a state of mind on the part of defendant.").

## Conclusion

After reviewing the evidence in the light most favorable to the jury's verdict and granting all reasonable inferences to the State, we hold there was sufficient evidence for a jury to find beyond a reasonable doubt that Sokolic acted with deliberation and is guilty of murder in the first degree. The circuit court did not err by denying Sokolic's motion for acquittal. We affirm the judgment.

_____
Renée D. Hardin-Tammons, Judge

Lisa P. Page, P.J. and
Thomas C. Clark, II, J., concur.