

# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION FIVE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110697 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Warren County |
| vs. | ) | |
| | ) | Honorable Jason H. Lamb |
| JENNIFER A. HEIDBRINK, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 18, 2023 |

<u>Introduction</u>

Jennifer A. Heidbrink ("Heidbrink") appeals from the trial court's judgment and sentence following a jury trial convicting her on charges of receiving stolen property, possession of a controlled substance, and possession of drug paraphernalia. Heidbrink raises five points on appeal. Heidbrink first argues the trial court erred in excluding recorded statements she made to the responding officer about having insurance for the stolen truck because the statements were offered as admissible prior consistent statements. Heidbrink next argues the trial court prejudicially erred in allowing the State to file a Sixth Amended Information because the amendment expanded the timeframe of the conduct alleged in Count I. In her third point, Heidbrink argues the trial court plainly erred when sentencing her on two of the three counts because it was mistaken as to the minimum available sentence for the charges. In her fourth point, Heidbrink maintains the trial court prejudicially erred in denying her motion for a speedy

trial. Lastly, Heidbrink contends the trial court plainly erred in failing to timely appoint her counsel for her initial appearance.

Heidbrink's prior recorded statements regarding insurance were merely cumulative to other testimony and served no rehabilitative purpose. The Sixth Amended Information filed by the State did not charge Heidbrink with a different or additional offense, or otherwise prejudice Heidbrink. Even though the trial court mistakenly believed the minimum sentence for the crimes of which Heidbrink was convicted was five years, Heidbrink did not meet her burden of proving the trial court based her sentences on its mistaken belief. Despite the lengthy delay between her arrest and trial, the trial court did not err in finding that the speedy-trial factors weighed against Heidbrink due to her numerous continuance requests and failure to timely assert her right to a speedy trial. Lastly, the record shows that Heidbrink was represented by counsel at the first critical stage of her case. Accordingly, we deny each of Heidbrink's points on appeal and affirm the trial court's judgment.

## Factual and Procedural History

Viewed in the light most favorable to the verdicts, the following evidence was adduced at trial:

On September 23, 2015, Warren County Sheriff's Sergeant Scott Taylor ("Sergeant Taylor") noticed a black truck in an undeveloped subdivision. Sergeant Taylor drove towards the truck and noticed that the passenger door was open. Sergeant Taylor approached the side of the truck and saw Heidbrink and her husband ("Husband") having sex.

Sergeant Taylor noticed several indications that the truck had been stolen. In particular, a white t-shirt was hanging over the steering column. The t-shirt was covering the ignition, which had been removed so that the truck could be started without a key. The truck was spray-painted black, including the bumper and wheels, and the paint was flaking. The back window was

2

removed and replaced with plexiglass and the dashboard was broken in multiple places. Sergeant Taylor ran the truck's license plates, which came back as possibly being stolen in August 2015. Sergeant Taylor then ran the truck's VIN, which was reported stolen. Neither Heidbrink nor Husband provided any title or registration for the truck.

Warren County Sheriff's Detective Jeff Doerr ("Detective Doerr") conducted an inventory search of the truck. Detective Doerr found a blue tote bag containing feminine hygiene products, prescription bottles with Heidbrink's name, and a smaller bag. The smaller bag contained a glass pipe with some residue. The pipe tested positive for methamphetamine.

On September 24, 2015, the State issued a warrant for Heidbrink's arrest and charged her with one count of receiving stolen property (Count I), one count of possession of a controlled substance (Count II), and one count of possession of drug paraphernalia (Count III).[1] Counts I and II were both class C felonies. That same day, a judge was assigned to Heidbrink's case. A hearing was scheduled for October 21, 2015. Police officers served the warrant on September 24, 2015, and Heidbrink posted bail.

Heidbrink appeared before the associate division of the Warren County Circuit Court on October 21, 2015. The legal file reflects that at that time, Heidbrink was not represented by private counsel, was not yet determined to be indigent, and was not yet appointed counsel from the Missouri State Public Defender ("MSPD"). According to a single-line entry on the docket, Heidbrink was arraigned at that initial appearance on October 21, despite the State having not yet filed the Information. Following the hearing on October 21, a counsel status hearing was scheduled for November 24, 2015. On that date, an indigency hearing was held, and Heidbrink was found to be indigent.

---

[1] The Fourth Amended Information added Count II after two separate cases stemming from the same incident on September 23, 2015 were consolidated.

3

On December 11, 2015, a public defender entered an appearance on behalf of Heidbrink and moved for discovery. A preliminary hearing was scheduled for February 10, 2016. On February 10, 2016, Heidbrink was ordered to appear before the Warren County Circuit Court. A circuit court judge was assigned to her case, and the circuit court scheduled an arraignment for April 5, 2016. The State filed the Information on February 16, 2016.

On April 5, 2016, Heidbrink was arraigned before the circuit court. The docket reflects that Heidbrink appeared by counsel. Heidbrink waived the reading of the Amended Information, which was later filed on April 12, 2016, and entered a plea of not guilty. Heidbrink moved to continue the case. On April 16, 2016, Heidbrink was incarcerated on unrelated charges.

On May 3, 2016, and June 7, 2016, Heidbrink successfully moved for continuances of her trial while she was incarcerated with the Missouri Department of Corrections. On August 2, 2016, Heidbrink appeared in person and again requested a continuance of her trial. The trial court rescheduled Heidbrink's trial for November 14, 2016.

On November 3, 2016, Heidbrink appeared at a motion hearing and requested that the trial court reschedule her trial so that she could obtain a psychological evaluation. The trial court granted Heidbrink's motion and rescheduled her trial for February 21, 2017. On February 21, March 7, April 4, and May 2, 2017, Heidbrink again requested and was granted continuances of her trial settings. The record does not contain Heidbrink's reasons for requesting these continuances.

Between June 2017 and June 2018, the trial court rescheduled Heidbrink's trial multiple times due to an overcrowded docket. On June 5, 2018, Heidbrink requested a continuance of her trial setting, which the trial court granted. The trial court scheduled Heidbrink's trial for October

4

11, 2018. On October 9, 2018, Heidbrink requested a continuance because defense counsel expected to be in the third day of a murder trial in another county on October 11.

On November 6, 2018, the trial court scheduled Heidbrink's trial for January 14, 2019. Between November 2018 and June 2020, the trial was rescheduled multiple times due to an overcrowded docket. Heidbrink filed a motion requesting a speedy trial in January 2020.

Heidbrink's case was eventually set for trial in July 2020. On June 30, 2020, the trial court removed Heidbrink's case from the July 2020 trial docket pursuant to the Supreme Court of Missouri's Administrative Order regarding jury trials during the COVID-19 pandemic. Heidbrink's trial was delayed solely by the pandemic until February 19, 2021, at which time Heidbrink filed a motion for continuance. Heidbrink requested that continuance because defense counsel was unavailable for a motion hearing scheduled for February 22, 2021.

The trial court scheduled Heidbrink's trial for October 25, 2021. On October 6, 2021, Heidbrink again requested a continuance because defense counsel was unavailable. The trial court granted the motion, and on January 31, 2022, Heidbrink's trial was set for April 18, 2022.

In summary, Heidbrink requested continuances on the following days: (1) April 5, 2016; (2) May 3, 2016; (3) June 7, 2016; (4) August 2, 2016; (5) November 3, 2016; (6) March 7, 2017; (7) April 4, 2017; (8) May 2, 2017; (9) June 5, 2018; (10) October 9, 2018; (11) November 6, 2018; (12) February 19, 2021; and (13) October 6, 2021. These thirteen continuances totaled over 1000 days of delay attributable to Heidbrink.

During the pendency of the case, the State filed several amended charging documents. Heidbrink objected to the State's request to file the Sixth Amended Information, which expanded the timeframe of the charged conduct in Count I from "on or about September, 23, 2015" to

between August 9, 2015 and September 23, 2015. On April 11, 2022, the trial court granted the State leave to file the Sixth Amended Information over Heidbrink's objection.

On April 8, 2022, Heidbrink filed a motion to dismiss based on a speedy-trial violation. In her written motion, Heidbrink argued the delay in her trial was presumptively prejudicial as the delay exceeded eight months. Heidbrink claimed prejudice due to the deaths of two key defense witnesses during the delay. In her argument, Heidbrink reasoned that her right to a speedy trial was violated by "the sheer time" between her arrest and trial and that two defense witnesses died during the delay. The trial court found that Heidbrink's multiple requests for continuances of the trial date outweighed any delays caused by an overcrowded docket or the COVID-19 pandemic. The trial court denied her motion to dismiss, and the case proceeded to trial on April 18, 2022.

At trial, Sergeant Taylor and Heidbrink both testified that Heidbrink presented an insurance card before her arrest. Heidbrink testified that her brother ("Brother") sold the truck to her but that she did not have insurance that specifically provided coverage for the truck. Heidbrink further testified her insurance policy "covered any vehicle [she] drove" but that she could not insure the truck in question until she obtained the title. Following her testimony, Heidbrink moved for the admission of the audio recording of her interaction with Sergeant Taylor on September 23, 2015 ("Exhibit G"). The audio recording included recorded statements describing her presenting the insurance card to Sergeant Taylor. The State objected to the admission of the recorded statements. The trial court sustained the State's objection on the grounds that the recorded statements were bolstering and cumulative.

The jury found Heidbrink guilty on all counts. At the sentencing hearing, the State recommended the trial court sentence Heidbrink to seven years on Count I and seven years on

6

Count II. When defense counsel for Heidbrink asked for a sentence of four years, the State countered that the minimum sentence for each count was five years because Heidbrink was a prior and persistent offender. The following exchange took place with the trial court:

THE STATE: Judge, if I may?

THE COURT: Yes.

THE STATE: The four-year request by the defense counsel is not even statutorily admissible. This is a [class] B [offense] because the defendant is prior and persistent, so it's five to fifteen and we feel seven is adequate and it's appropriate in this situation.

THE COURT: That is true. Because of her priors the minimum is five. [Heidbrink], do you know of any legal reason why judgment and sentence should not be imposed at this time, ma'am?

HEIDBRINK: Um, no, your Honor.

THE COURT: All right. It is the judgment and sentence of the Court that the defendant be sentenced to serve a term of seven years in the Missouri Department of Corrections on Count I and seven years in the Missouri Department of Corrections on Count II and one year in the Warren County Jail on Count III. Those will run concurrently to each other for a total of seven years in this case. That will also run concurrent with any sentence she is currently serving in the Missouri Department of Corrections.

Following sentencing, Heidbrink moved for a new trial. In her motion for new trial, Heidbrink argued, among other claims, that the trial court abused its discretion in excluding the audio recording of Heidbrink and Sergeant Taylor during her arrest; the trial court abused its discretion by not dismissing the case for a speedy-trial violation; and the trial court erred in allowing the State to file its Sixth Amended Information. Regarding the speedy-trial claim, Heidbrink argued she was prejudiced because two witnesses, Husband and Brother, died before her trial. Heidbrink now appeals.

7

Heidbrink raises five points on appeal. Heidbrink first argues the trial court erred in excluding her recorded statements to Sergeant Taylor because the statements were admissible as prior consistent statements. Heidbrink next argues the trial court prejudicially erred in allowing the State to file its Sixth Amended Information, which expanded the dates charged in Count I. Specifically, Heidbrink contends that allowing the State to expand the time period alleged in Count I deprived her of adequate notice to find potential alibi witnesses and to prepare an adequate defense for trial. In her third point, Heidbrink argues the trial court plainly erred in sentencing her to seven years on Counts I and II because the trial court held a materially false belief that the minimum available sentence for these counts was five years, which prejudiced her because the minimum sentence available was actually one year. In her fourth point, Heidbrink maintains the trial court prejudicially erred in denying her motion to dismiss based on a speedy-trial violation because over six years had passed between her arrest and trial. Lastly, Heidbrink contends the trial court plainly erred in failing to appoint her counsel at her initial appearance and purported arraignment hearing because the trial court was statutorily obligated to do so.

## Discussion

**I.    Points One and Two—No Abuse of Discretion in Trial Court's Rulings Excluding Evidence and Permitting Amended Charging Documents**

### A.    Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion. State v. Loper, 609 S.W.3d 725, 731 (Mo. banc 2020). Similarly, we review a trial court's decision to allow an amendment of a charging document for an abuse of discretion. State v. Lambert, 589 S.W.3d 116, 118 (Mo. App. S.D. 2019) (quoting State v. Seeler, 316 S.W.3d 920, 925 (Mo. banc 2010)). A trial court abuses its discretion only if its decision "is clearly

8

against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." Loper, 609 S.W.3d at 731 (quoting State v. Blurton, 484 S.W.3d 758, 769 (Mo. banc 2016)). We will reverse the trial court's judgment "only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." Id. (quoting State v. Wood, 580 S.W.3d 566, 574 (Mo. banc 2019)).

B.      Point One Analysis—Exclusion of Evidence

Heidbrink argues the trial court's exclusion of her recorded statements in Exhibit G was erroneous because the statements were admissible as prior consistent statements. Heidbrink offered the recorded statements to rehabilitate her credibility following cross-examination by the State challenging her claim that she had insurance coverage for the truck.

The trial court "has broad discretion to admit or exclude evidence during a criminal trial[.]" Id. (quoting State v. Hartman, 488 S.W.3d 53, 57 (Mo. banc 2016)). "[T]he erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice." State v. Taylor, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019) (quoting State v. Ellis, 512 S.W.3d 816, 825 (Mo. App. W.D. 2016)). The presumption of prejudice may be rebutted by proving that the error was "harmless beyond a reasonable doubt." Id. "In assessing whether the exclusion of evidence was harmless beyond a reasonable doubt, the facts and circumstances of the particular case must be examined, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory." Id. "The exclusion of evidence is harmless beyond a reasonable doubt where the excluded evidence is cumulative of other evidence which was admitted at trial." Id.

"Prior consistent statements are admissible to rehabilitate a witness after [their] credibility has been attacked" by a claim of recent fabrication. State v. Davis, 186 S.W.3d 367,

9

375 (Mo. App. W.D. 2005) (internal citation omitted). "'Any evidence tending to permit an inference [that] the testimony of a witness is recently fabricated opens the door' for the witness's consistent statement made prior to the suggested fabrication." Id. "Only prior consistent statements made before the impeaching statement are admissible for the purpose of rehabilitation." Id. "Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." Id. (quoting State v. Ramsey, 864 S.W.2d 320, 329 (Mo. banc 1993)). A party may, however, introduce the prior consistent statement for another purpose. Id.

Here, Heidbrink testified at trial that she provided an insurance card to Sergeant Taylor before her arrest. On cross-examination, the State challenged Heidbrink's credibility regarding her claim that she had insurance coverage for the truck. Heidbrink admitted that her insurance policy did not specifically identify or cover the truck in question. Heidbrink then sought to rehabilitate herself by introducing Exhibit G, which contained an audio recording reflecting that Heidbrink presented her insurance card to Sergeant Taylor.

Whether Heidbrink provided Sergeant Taylor with her insurance card is not disputed. Indeed, Sergeant Taylor in his trial testimony, corroborated Heidbrink's claim that she gave him an insurance card. But, the State asserts that although Heidbrink provided an insurance card to Sergeant Taylor, that card did not show an insurance policy that covered the truck in question. Heidbrink's credibility as to providing the officer with an insurance card was not attacked on cross-examination. See Davis, 186 S.W.3d at 375. Heidbrink argues that the State's assertion that she did not provide proof of insurance for the stolen truck was an attack on her credibility that warranted the introduction of her prior statements. But Exhibit G simply would have corroborated the uncontested fact that Heidbrink provided an insurance card, nothing more. See

10

id. (quoting Ramsey, 864 S.W.2d at 329). Admitting Exhibit G into evidence would have been duplicative of both Heidbrink's and Sergeant Taylor's prior testimony and would have served no rehabilitative purpose. See id. Because Exhibit G was cumulative of Heidbrink's own testimony and the testimony of Sergeant Taylor, the trial court did not abuse its discretion by excluding the evidence. See Loper, 609 S.W.3d at 731; Taylor, 588 S.W.3d at 637. Point One is denied.

C.     Point Two Analysis—Amended Information

Heidbrink next argues that the trial court prejudicially erred in allowing the State to file the Sixth Amended Information, which expanded the dates charged in Count I. Specifically, Heidbrink contends that allowing the State to expand the time period alleged in Count I deprived her of adequate notice to find potential alibi witnesses and to prepare an adequate defense for trial.

We review the trial court's decision allowing the State to file its Sixth Amended Information for an abuse of discretion. See Lambert, 589 S.W.3d at 118 (quoting Seeler, 316 S.W.3d at 925). "The purpose of an indictment or information is to inform the accused of [the] charges against [them] so that [they] may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal." Id. (citing State v. Rohra, 545 S.W.3d 344, 347 (Mo. banc 2018)). Rule 23.08[2] governs the amendment of an indictment or information:

> Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:
>
> (a) No additional or different offense is charged, and
>
> (b) A defendant's substantial rights are not thereby prejudiced.
>
> No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

---

[2] All Rule references are to Mo. R. Crim. P. (2021).

Rule 23.08. If either prong is not satisfied, then Rule 23.08 is violated and the trial court shall not allow the amended information to be filed. Lambert, 589 S.W.3d at 119.

Here, the State sought leave to file the Sixth Amended Information one week prior to trial. The Sixth Amended Information changed the timeframe in which Heidbrink allegedly received the stolen property in Count I. Specifically, the amendment charged that Heidbrink committed the offense of receiving stolen property between the dates of August 9, 2015 and September 23, 2015 as opposed to "on or about September 23, 2015." Because the Sixth Amended Information did not charge an additional or different offense, we find the first prong of Rule 23.08 was satisfied, and Heidbrink does not base her appeal on this prong. See id. at 118.

When an amended information is filed before the jury's verdict, we consider whether the amendment prejudiced the defendant's substantial rights. Id. at 119 (citing Seeler, 316 S.W.3d at 926). Our prejudice analysis for the second prong of Rule 23.08 in this context focuses on "whether the planned defense to the original charge still would be available after the amendment and whether the defendant's evidence would be applicable before and after the amendment." Id. (citing Seeler, 316 S.W.3d at 926).

Heidbrink asserts that once she objected to the State's proposed filing of the Sixth Amended Information, the burden shifted to the State to prove that the filing of the amended charging documents did not violate Rule 23.08, specifically that her planned defenses would be equally available both before and after the Sixth Amended Information was filed. See State v. Nelson, 505 S.W.3d 437, 442 n.4 (Mo. App. W.D. 2016) ("To take advantage of Rule 23.08, the State must demonstrate both of the Rule's conjunctive requirements."). Accordingly, Heidbrink reasons, because the State did not demonstrate that the expanded timeline of the charged conduct in Count I satisfied Rule 23.08(b), the trial court was obligated to deny the State leave to file. On

12

appeal, Heidbrink further maintains that her point should be granted because the State cannot prove she was not prejudiced under Rule 23.08(b).

However, the Southern District in Lambert declined to follow Nelson's interpretation of State v. Thompson, 392 S.W.2d 617 (Mo. banc 1965) as shifting the burden of proving prejudice to the State.[3] Nelson's burden shifting, which Lambert held was merely dicta, appears to be an outlier in the line of cases interpreting Rule 23.08. See Lambert, 589 S.W.3d at 119; see also Stark v. State, 644 S.W.3d 583, 589 (Mo. App. W.D. 2022) (finding the appellant's failure to develop an argument addressing the second prong of Rule 23.08 was fatal to the appeal); State v. Canaday, 476 S.W.3d 346, 351 (Mo. App. W.D. 2015). We decline to follow the burden shifting language of Nelson, and hold that Heidbrink carries the burden of proving that the filing of the Sixth Amended Information prejudiced her defense. See Lambert, 589 S.W.3d at 119.

Heidbrink argues she had no time to prepare possible alibis or investigate other issues relating to the charges presented in the Sixth Amended Information due to the expanded timeframe in which she purportedly received stolen property in Count I. Heidbrink's argument fails because she offers no explanation as to how the expanded time frame prejudiced her defense. Instead, Heidbrink merely asserts the State was obligated to demonstrate the absence of any prejudice to Heidbrink's alibi defense and, because the State failed to do so, we should grant the point on appeal. See id. Heidbrink simply fails to develop an argument adequately

---

[3] See Lambert, 589 S.W.3d at 119 n.4 (emphases in original) ("We agree with Nelson insofar as Thompson's treatment of Rule 23.08 as conjunctive (*i.e.*, that an amendment must (1) contain no additional or different offense, *and* (2) not prejudice defendant's substantial rights). However, we discern no treatment in Thompson to the effect that the State bears this subjunctive burden. No other case relies on Thompson for Nelson's premise, and no case has relied on Nelson for its dicta. As a matter of practice, we do not discern how the State would demonstrate the absence of a lost-alibi defense (at the time of pre-verdict amendment) by *substantial evidence*, and therefore decline to follow Nelson.")

13

addressing the second prong of the test required to establish a violation of Rule 23.08. Heidbrink's failure is fatal to this point of her appeal. See Stark, 644 S.W.3d at 589.

We further note that Heidbrink's defense at trial—that she did not know the truck was stolen—was equally applicable to her before and after the Sixth Amended Information was filed. See Lambert, 589 S.W.3d at 119. Heidbrink has not shown that when she received the truck was relevant to whether she knew it was stolen, and she has not disputed that she obtained the truck during the expanded timeframe in the Sixth Amended Information.

Because Heidbrink has not demonstrated that her planned defense was no longer available due to the Sixth Amended Information's expanded timeframe as to Count I, Heidbrink has failed to show that the Sixth Amended Information violated Rule 23.08. See id. Accordingly, the trial court did not abuse its discretion in allowing the State to file its Sixth Amended Information. See id. at 118; Loper, 609 S.W.3d at 731. Point Two is denied.

## II.  Point Four—No Error in the Trial Court's Denial of the Speedy-Trial Motion

### A.  Standard of Review

The right to a speedy trial is guaranteed by both the United States and Missouri constitutions. U.S. Const. amend.VI; Mo. Const. art. I, Section 18(a); State v. Sisco, 458 S.W.3d 304, 313 (Mo. banc 2015). When reviewing a trial court's ruling on a motion to dismiss based on a defendant's constitutional right to a speedy trial, we defer to the trial court's factual findings and review de novo whether the defendant's Sixth Amendment right to a speedy trial was violated. Sisco, 458 S.W.3d at 313.

### A.  Analysis

Heidbrink's speedy trial argument focuses on the six years that passed between her arrest and trial. Heidbrink notes that key defense witnesses died during the period of delay.

14

Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay (collectively the "Barker factors"). Sisco, 458 S.W.3d at 313 (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "The delay in bringing a defendant to trial is measured from the time of a formal indictment or information or when actual restraints are imposed by an arrest." Id. (internal citation omitted). In Missouri, a delay longer than eight months is presumptively prejudicial. Id. However, a delay longer than eight months does not establish prejudice under the fourth Barker factor but instead marks a floor below which we would not even consider the other factors. Id. at 318; State v. Atchison, 258 S.W.3d 914, 919 (Mo. App. S.D. 2008).

Heidbrink's warrant was served on September 24, 2015, and her case proceeded to trial over six and a half years later on April 18, 2022. Without question, this passage of time exceeds the mark for presumptive prejudice and triggers analysis of the remaining Barker factors. Sisco, 458 S.W.3d at 313.

Next, we address the different reasons for the delay. Barker provides guidance on how to weigh different reasons for a delay:

> A *deliberate attempt to delay the trial* in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or *overcrowded courts* should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, *a valid reason*, such as a missing witness, should serve to justify appropriate delay.

Id. at 314 (quoting Barker, 407 U.S. at 531) (emphases added). Importantly, a defendant who contributes to the delay cannot later successfully allege the denial of her rights to a speedy trial. State v. Greenlee, 327 S.W.3d 602, 612 (Mo. App. E.D. 2010) (internal citation omitted).

15

Delays attributable to the defendant weigh heavily against the defendant in a speedy trial analysis. Id. (internal quotation omitted).

The record shows no evidence of a deliberate attempt by the State to hamper Heidbrink's defense. But the record shows that an overcrowded docket contributed to lengthy delays on two separate occasions from June 6, 2017 to June 5, 2018 and from November 6, 2018 to June 30, 2020. See Sisco, 458 S.W.3d at 314 (quoting Barker, 407 U.S. at 531). These two delays account for 966 days, which weigh slightly against the State. See id.

The trial was delayed due solely to the COVID-19 pandemic from June 30, 2020 until February 19, 2021. Delay due to the pandemic is not weighed against the State in a speedy-trial analysis. State v. Summers, 653 S.W.3d 155, 164 (Mo. App. W.D. 2022) (internal citation omitted); State v. Oliver, 655 S.W.3d 407, 417 (Mo. App. E.D. 2022) (finding "that delays attributable to the COVID-19 pandemic should generally not be weighed against either party"). This delay of 234 days does not weigh against either party. See Summers, 653 S.W.3d at 164; Oliver, 655 S.W.3d at 417.

Critical to our review of the Barker factors, Heidbrink requested a total of thirteen continuances during the pendency of her case. See Greenlee, 327 S.W.3d at 612; Whitley v. State, 501 S.W.3d 531, 533 n.2 (Mo. App. E.D. 2016). The record lacks an explanation for several of Heidbrink's continuances. Heidbrink requested one continuance to obtain a psychological evaluation, but there is no record of that evaluation if it was conducted. The remaining continuances were requested due to defense counsel conflicts. Given that these requested continuances account for over 1000 days of delay attributable to Heidbrink, this factor weighs heavily against finding a violation of her right to a speedy trial. See Sisco, 458 S.W.3d at 314 (quoting Barker, 407 U.S. at 531); Greenlee, 327 S.W.3d at 612.

16

We must also review whether and how Heidbrink invoked her right to a speedy trial. "Although there is no bright line rule . . . we consider 'the timeliness of the assertion and the frequency and force of a defendant's objections.'" Edwards v. State, 636 S.W.3d 606, 613 (Mo. App. E.D. 2021) (quoting Sisco, 458 S.W.3d at 316). A defendant's failure to timely assert their right to a speedy trial in a lengthy detainment weighs against the defendant. Oliver, 655 S.W.3d at 420 (finding a defendant's singular request for a speedy trial twenty-eight months into a forty-eight-month detainment weighed against the defendant). Heidbrink moved for a speedy trial in January 2020 — fifty-two months after her initial detainment and, notably, *only after* she had already requested eleven of her thirteen continuances. Heidbrink filed a motion to dismiss based on a speedy-trial violation in April 2022, ten days before trial. Although Heidbrink invoked her right to a speedy-trial on two occasions, we are persuaded that she failed to do so in a timely, frequent, or forceful manner. See id. This factor weighs against Heidbrink. See Sisco, 458 S.W.3d at 314 (quoting Barker, 407 U.S. at 531); Oliver, 655 S.W.3d at 420.

Finally, we consider the prejudice suffered by the defendant as a result of the delay in bringing the case to trial. Sisco, 458 S.W.3d at 317 (internal citation omitted). Whether a delay prejudiced the defendant is evaluated in light of three concerns: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired. Id. We view the impaired-defense consideration as the most serious. Id. (internal citation omitted). "Claims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient." Greenlee, 327 S.W.3d at 612–13 (internal citation omitted). "Failure to present evidence of actual prejudice weighs heavily in favor of the State." Id.

17

Here, Heidbrink focuses her prejudice claim solely on the impairment of her defense. Heidbrink claims she was prejudiced because two of her witnesses, Brother and Husband, died during the delay.

Husband, who was also Heidbrink's co-defendant, died in 2021. In her brief and motions, Heidbrink does not explain how Husband's death impaired her defense. Although we acknowledge that Husband's testimony may have been relevant, as they were found together in the stolen truck, we will not speculate how Husband's death impacted Heidbrink's defense. See id. Heidbrink's failure to demonstrate how Husband's testimony would have impacted her defense weighs against any finding of prejudice. See id.

Heidbrink alleges that Brother sold her the truck. Heidbrink argues that she was prevented from admitting evidence of text messages relating to her purchase of the truck from him because Brother was not available to testify to their authenticity. Heidbrink never specifies in the record the date of Brother's death, only that he died sometime in 2016 or 2017. Because any delay in Heidbrink's trial following Brother's death could not have impacted her defense, we focus on any delay prior to his death. Heidbrink cannot base her impaired-defense claim on speculation regarding whether Brother would have been alive and available to testify. See Greenlee, 327 S.W.3d at 612–13 (internal citation omitted). Further, as demonstrated by the record, Heidbrink moved for continuances in April, May, June, August, and November 2016, and March, April, and May 2017. Any delay in the trial that potentially rendered Brother unavailable to testify was attributable to Heidbrink. In light of the numerous continuances granted by the trial court at Heidbrink's request, coupled with Heidbrink's failure to provide the date Brother died, this factor weighs against Heidbrink. See Sisco, 458 S.W.3d at 317 (internal citation omitted).

18

We recognize the general impact of delays in jury trials due to the COVID-19 pandemic and are mindful of the very lengthy delay between Heidbrink's arraignment and her trial in this particular case. Nevertheless, upon balancing each of the four factors detailed above, particularly the many delays attributable to Heidbrink and her speculative claims of defense impairment, we find that the factors weigh in favor of the State and that there was no violation of Heidbrink's right to a speedy trial. See id. at 314 (quoting Barker, 407 U.S. at 531). Point Four is denied.

## III. Points Three and Five—Trial Court did not Plainly Err in Sentencing or Timely Appointment of Counsel

Heidbrink acknowledges Points Three and Five are not properly preserved for appellate review and now requests that we conduct plain error review. In Point Three, Heidbrink challenges her sentence of seven years in prison on Counts I and II because the trial court held a mistaken belief as to the minimum available sentence for those counts. Heidbrink neither objected at sentencing nor raised the issue in her motion for new trial. In Point Five, Heidbrink contends the trial court's failure to appoint counsel at her initial appearance and purported arraignment hearing mandates reversal of her convictions on constitutional grounds. Heidbrink did not raise this issue in her motion for new trial so as to preserve this point for review but requests that we exercise our discretionary power to review her claims for plain error. See Rule 30.20; State v. Stiff, 626 S.W.3d 916, 922 (Mo. App. E.D. 2021) (citing State v. Pierce, 548 S.W.3d 900, 904 (Mo. banc 2018)).

### A. Standard of Review

Appellate courts use a two-step process when reviewing a claim for plain error. Stiff, 626 S.W.3d at 922 (citing Pierce, 548 S.W.3d at 904). First, a court must determine "whether the claim of error facially establishes substantial grounds for believing that manifest injustice or

19

miscarriage of justice has resulted." Id. (quoting State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009)). Plain errors are those errors which are evident, obvious, and clear. Id. Second, if plain error is found, we must determine "whether the claimed error resulted in manifest injustice or a miscarriage of justice." Id. (quoting Baumruk, 280 S.W.3d at 607–08). Plain error can only serve as the basis for granting a new trial on direct appeal if the error was outcome determinative. Id. (citing State v. Baxter, 204 S.W.3d 650, 652 (Mo. banc 2006)).

B.    Point Three Analysis—Sentencing

In her third point, Heidbrink focuses on the trial court's mistaken belief that the minimum sentence available to the court on Counts I and II was five years rather than the actual minimum sentence available of one year. Heidbrink reasons she was prejudiced because, in the absence of an alternative consideration, the trial court must have based her sentence on that mistaken belief.

"A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome." Pierce, 548 S.W.3d at 904 (quoting Wraggs v. State, 549 S.W.2d 881, 884 (Mo. banc 1977)). Missouri courts have provided a clear framework for reviewing sentencing errors for plain error and have instructed that a defendant "has the burden to establish the [trial] court *based* its sentence on a mistaken belief, not merely that it held such a belief." Id. at 906 (emphasis added). For instance, it is well established that a trial court plainly errs by sentencing the defendant to the misstated minimum sentence, if the trial court does not offer a valid alternative reason for imposing the sentence. See Pierce, 548 S.W.3d at 906 n.5.

In two recent cases concurrently issued, the Supreme Court of Missouri upheld sentences on plain error review despite the trial courts' misstatements of the minimum available sentences. See Pierce, 548 S.W.3d at 906; State v. Perry, 548 S.W.3d 292, 301 (Mo. banc 2018). Perry

20

contained analogous facts to the case before us. In <u>Perry</u>, the defendant was convicted of a class C felony and found to be a persistent offender. The State recommended a sentence of eight years. The defendant was subject to a sentencing range of one to fifteen years. Like here, the trial court and State mistakenly believed the sentencing range was five to fifteen years because the defendant was a prior and persistent offender. <u>Id.</u> at 300. The claim was not preserved for review because the defendant failed to object at the sentencing hearing. <u>Id.</u> At sentencing, the trial court merely affirmed the State's misstatement of the minimum available sentence before imposing the eight-year sentence recommended by the State with no further explanation. <u>Id.</u> at 297. Reviewing the defendant's claim for plain error, the Supreme Court concluded that the defendant failed to make a "case-specific showing that he was sentenced based on the circuit court's mistaken belief[.]" <u>Id.</u> at 301. In support of its decision, the Court noted that the trial court sentenced the defendant *above* the misstated minimum sentence and that the sentence imposed was precisely what the State recommended. <u>Id.</u>

Here, during the sentencing hearing, the State misadvised the trial court that the minimum available sentences on Counts I and II was five years because Heidbrink was a prior and persistent offender.[4] The correct minimum sentence was one year. The State objected to Heidbrink's suggested sentence of four years imprisonment, asserting it was "not even statutorily" permissible. The transcript makes clear that the trial court held the mistaken belief that the minimum sentence was five years. Specifically, the trial court stated, "[b]ecause of her priors, the minimum [sentence on each of the two counts] is five." On appeal, the State concedes

---

[4] "The ordinary range of punishment for a class C felony is one year in the county jail up to a maximum of seven years in the Department of Corrections, and five to 15 years in the Department of Corrections for a class B felony. Section 558.011.1(2), .2, RSMo Supp. 2013. At the time of sentencing, only the maximum sentence increased for a persistent offender, while the minimum sentence was unaffected—e.g., a persistent offender convicted of a class C felony was subject to a range consisting of the minimum sentence for a class C felony and the maximum sentence for a class B felony." <u>Perry</u>, 548 S.W.3d at 300.

21

that the applicable sentencing range for Counts I and II was *one* to fifteen years, not *five* to fifteen years. After acknowledging the incorrect minimum sentence of five years, the trial court asked Heidbrink if there was any legal reason not to impose the judgment and sentence, which Heidbrink denied, and the trial court proceeded to sentence her pursuant to the State's recommendation of seven years on each of the two counts. The trial court did not discuss any other considerations before imposing the seven-year sentences.

The State concedes that the trial court misstated the minimum sentence at the hearing. But to prevail on plain error, Heidbrink bears the burden of establishing manifest injustice. Under the facts of this case, proving manifest injustice requires more than establishing the trial court's mistaken belief about the minimum sentence. Heinbrink must show that the trial court *based* her sentence on that mistaken belief. Perry, 548 S.W.3d at 301 (internal quotation omitted); Pierce, 548 S.W.3d at 906. While the record clearly shows the trial court held a mistaken belief that the sentencing range on Counts I and II was five to fifteen years rather than one to fifteen years, the record lacks facts to support a conclusion that the trial court imposed the seven-year sentences based on its mistaken belief as to the minimum sentences. Rather, the facts before us are indistinguishable from those in Perry, in which the trial court imposed the State's recommended sentence, which exceeded the misstated minimum sentence. See Perry, 548 S.W.3d at 301. In both cases, the trial court was silent as to its reasoning for imposing a sentence above the misstated minimum sentence of five years. Importantly, the trial court made no statements indicating it would have imposed a lesser sentence were it available. See id. The Supreme Court held that under those facts the defendant did not meet his burden to prove plain error. See id. Heidbrink has not offered an argument distinguishing the facts in her case from the facts in Perry. As we are bound by the Supreme Court's mandate, we similarly must find

Heidbrink has not met her burden on appeal. See Perry, 548 S.W.3d at 301. Point Three is

denied. See Stiff, 626 S.W.3d at 922 (quoting Baumruk, 280 S.W.3d at 607–08); Pierce, 548

S.W.3d at 906; Perry, 548 S.W.3d at 301.

C.       Point Five Analysis—Appointment of Counsel

In her final point, Heidbrink contends the trial court plainly erred in failing to appoint

counsel at her initial appearance.

The right to counsel is afforded under the Sixth Amendment of the United States

Constitution and Article I, Section 18(a) of the Missouri Constitution. Specifically, regarding

appearances, "in criminal prosecutions the accused shall have the right to appear and defend, in

person and by counsel." Mo. Const. art. I, Section 18(a). Our Rule 31.02(a) mirrors the

protections of the state and federal constitutions, requiring that "[i]n all criminal cases, the

defendant shall have the right to appear and defend in person and by counsel." Further,

> If any person charged with an offense, the conviction of which would probably
> result in confinement, shall be without counsel upon his first appearance before a
> judge, it shall be the duty of the court to advise him of his right to counsel, and of
> the willingness of the court to appoint counsel to represent him if he is unable to
> employ counsel. Upon a showing of indigency, it shall be the duty of the court to
> appoint counsel to represent him.

Rule 31.02(a). "If a defendant in a felony case appears for arraignment without counsel, and if

appointment of counsel is waived by the defendant, the reporter shall prepare a transcript of such

proceedings and file it in the case." Rule 31.02(b).

Federal cases instruct that the right to counsel attaches "at the first appearance before a

judicial officer at which a defendant is told of the formal accusation against him and restrictions

are imposed on his liberty." Rothgery v. Gillespie Cnty., 554 U.S. 191, 194 (2008); see Doe v.

Phillips, 194 S.W.3d 833, 841 (Mo. banc 2006) (internal quotation omitted) (noting analyses of

similar federal constitutional provision are "strongly persuasive in construing the like section of

23

our state constitution"). The first appearance before a judicial officer "marks the start of adversar[ial] judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." Rothgery, 554 U.S. at 213. As for the timing of the appointment of counsel, "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any *critical stage* before trial, as well as at trial itself." Id. at 212 (emphasis added). "Once attachment occurs, the accused at least is entitled to the presence of appointed counsel during any 'critical stage' of the postattachment proceedings." Id. Caselaw "define[s] critical stages as proceedings between an individual and agents of the State (whether formal or informal, in court or out), that amount to *trial-like confrontations*, at which counsel would help the accused in coping with legal problems or meeting his adversary." Id. at 212 n.16 (emphasis added).

Missouri courts have specified that arraignments constitute a critical stage for purposes of the right to counsel:

> It is well settled that the right to the effective assistance of counsel applies to certain steps before trial, [as the] "Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *Critical stages include arraignments*, postindictment interrogations, postindictment lineups, . . . the entry of a guilty plea, as well as trial.

State ex rel. Mo. Pub. Def. Comm'n v. Waters, 370 S.W.3d 592, 606–607 (Mo. banc 2012) (emphasis added) (internal quotations omitted). Although prejudice must be shown generally under plain error review, prejudice is presumed where counsel was absent at a critical stage of a criminal proceeding. United States v. Cronic, 466 U.S. 648, 659 n.25 (1984).

Accordingly, in order for Heidbrink to prevail on appeal, she must show that the initial appearance on October 21, 2015 was a critical stage in her criminal proceedings involving a trial-like confrontation for which the court plainly erred in failing to timely appoint her counsel. See Waters, 370 S.W.3d at 606–07.

24

Heidbrink and the State disagree about what occurred at the October hearing. The State maintains the October hearing was merely an initial appearance despite being denominated as an arraignment in the docket entry. The State points out that no arraignment occurred until April 5, 2016 — after Heidbrink was found to be indigent and appointed counsel, and after the Information was filed on February 16, 2016. We find the record conforms to the State's interpretation. Heidbrink acknowledges that the record for her initial appearance is confusing and erroneously hinges her argument on the assumption that the October 2015 appearance was actually an arraignment, with all the rights attached. Heidbrink notes that Rule 24.01 provides that an arraignment shall only consist of reading the indictment or information to the defendant and calling on him or her to plead thereto. See Rule 24.01. Thus, the trial court could not have held a proper arraignment in October 2015 given that the State had only filed the initial complaint and had not yet filed the Information. See id.

On April 5, Heidbrink appeared by counsel for her arraignment hearing. The formal charges in the Information would have been read, a hallmark of a critical stage for purposes of the appointment of counsel, but Heidbrink's counsel waived the reading of the State's Amended Information. See Rule 31.02(b). Following her initial appearance in October 2015, the trial court properly ensured that Heidbrink was timely appointed counsel before her arraignment in April 2016. See id.; Waters, 370 S.W.3d at 606–07. Further, the docket entry for the April arraignment contained all the associated details of the proceedings, which the purported October arraignment lacked. The record supports a finding that the first "trial-like confrontation" did not occur until the April arraignment hearing at which the State appeared and Heidbrink appeared with counsel. See Rothgery, 554 U.S. at 212 n.16. The record sufficiently shows that Heidbrink was not arraigned until the case came up for an arraignment hearing in the circuit court in April

25

2016. The scant docket entry for her initial appearance on October 21, 2015, does not support Heidbrink's claim that she was without counsel at a critical stage. See id. Because Heidbrink was represented by counsel at her arraignment, the first "critical-stage" of her case, the trial court did not plainly error in failing to timely appoint counsel.[5] See Rule 31.02; Waters, 370 S.W.3d at 606–07. We deny Point Five.

## Conclusion

The judgment of the trial court is affirmed.

KURT S. ODENWALD, Judge

Michael E. Gardner, C.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

---

[5] Appellate Counsel requested that we review a recent judgment from the Circuit Court of Cole County (Case No. 20AC-CC00093). The circuit court found the MSPD's practice of placing indigent defendants on a waiting list "unconstitutional only to the extent that it is applied to allow the State to charge a defendant with a crime or probation violation wherein the State seeks defendant's incarceration, and then fail to furnish the defendant with counsel within two weeks *after defendant has been found indigent and otherwise entitled to appointment of counsel*." (Emphasis added). While we understand the frustration with the waiting list practice, we find this case distinguishable because Heidbrink had not been found indigent at the time of the hearing in October 2015 nor was she arraigned at that hearing.

26