

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD85165 |
| v. | ) |
| | ) OPINION FILED: |
| | ) May 16, 2023 |
| CHUKWUEMEKA U. EMMANUEL, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jennifer M. Phillips, Judge**

**Before Division One:** W. Douglas Thomson, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Chukwuemeka Emmanuel appeals, following a bench trial, his conviction of rape in the first degree, § 566.030,[1] for which he was sentenced to twenty years' imprisonment. Emmanuel raises two points on appeal. First, he asserts the trial court plainly erred in accepting his waiver of jury trial and proceeding with a bench trial, because the record does not establish that his waiver was knowing, voluntary, and

---

[1] All statutory citations are to the Revised Statutes of Missouri, 2018 Supp.

intelligent. Second, he argues the court erred in entering a conviction for first-degree rape because there was insufficient evidence of penetration. Finding no error, we affirm.

## Background

After Emmanuel was charged but well before trial, his counsel filed a Waiver of Jury Trial and Request for Bench Trial. The waiver stated, "[a]fter consideration of the matter and client input, too, the Defense requests a bench trial be set to hear the merits of the case." The waiver was electronically signed by counsel but was not signed by Emmanuel.

At trial, Victim testified that, on June 15, 2019, she was a patient at Centerpoint Medical Center, where she was being treated for a post-operative infection and receiving morphine for pain. Emmanuel was working as Victim's nurse. According to Victim, the combination of the infection and the morphine made her "a little loopy," "kind of disassociated," and "weak in certain areas."[2]

At some point during that day, Victim, who was bedridden and had a urinary catheter, pressed her call button because she thought her catheter was leaking. Emmanuel responded and began adjusting the catheter. Victim slipped in and out of consciousness but, at some point, regained consciousness and discovered Emmanuel on top of her in her bed. When asked to describe what she felt at that moment, Victim

---

[2] One of Victim's doctors at Centerpoint testified that morphine can decrease mental performance but does not cause an absolute inability to recall events. According to the doctor, Victim was able to function and interact with the medical staff. Hydrocodone, which has some of the same effects as morphine, was also administered to Victim.

testified, "There was vaginal penetration with his penis, and he proceeded to have sex with me." Victim told Emmanuel that he was hurting her, and she asked him to stop; he did not, and she lost consciousness again.

When Victim awoke the next morning, her vaginal area was wet and sore. She had flashbacks to Emmanuel adjusting her catheter, being on top of her, penetrating her vagina with his penis, and hurting her. Victim notified hospital administration and the police.

A fellow nurse, with whom Emmanuel was having an affair, testified that he called her from the airport on his way out of the country and admitted to having had sex with Victim but insisted it was consensual.[3] While the fellow nurse was later being interviewed by police, Emmanuel called her again, and the police recorded their conversation, during which Emmanuel again admitted to having sex with Victim.

A criminologist with the Missouri State Highway Patrol Crime Laboratory testified that a stain on a white blanket collected from Victim's hospital bed indicated the possible presence of seminal fluid. The stain was then analyzed by a DNA criminologist who testified, "The observed [DNA] mixture profile is approximately 2.429 septillion times more likely to occur under the scenario that it originated from a mixture of DNA from [Victim] and . . . Emmanuel as opposed to the scenario that it originated from a mixture of DNA from [Victim] and another unknown, unrelated individual." But

---

[3] Although Emmanuel was talked out of leaving the country at that point, he did travel to Nigeria, but returned to the United States and was arrested in Atlanta, Georgia.

Emmanuel's DNA expert testified that the DNA evidence was inconclusive as to the identity of the male contributor.

The court found Emmanuel guilty of first-degree rape and sentenced him to twenty years' imprisonment. Emmanuel moved for a new trial but did not allege error regarding his jury trial waiver; the court denied the motion. This appeal follows.[4]

## Analysis

Emmanuel raises two points on appeal. First, he asserts the trial court plainly erred in accepting his waiver of jury trial and proceeding with a bench trial because the record does not establish that his waiver was knowing, voluntary, and intelligent. Second, he argues the court erred in entering a conviction for first-degree rape because there was insufficient evidence of penetration. We discuss each point in turn.

### I. The trial court did not plainly err in accepting Emmanuel's jury trial waiver.

Emmanuel acknowledges the claim he raises in Point I is not preserved for appellate review and requests plain error review under Rule 30.20.[5] Rule 30.20 provides, in pertinent part, "Whether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." "Under plain error review, we must determine whether the alleged error is 'evident, obvious, and clear error' [and] 'facially establishes substantial grounds for believing that manifest injustice or a miscarriage of

---

[4] Additional facts will be provided in the analysis, as necessary, to address Emmanuel's claims.

[5] All Rule references are to the Missouri Supreme Court Rules (2021).

justice' has occurred." *State v. Ratliff*, 622 S.W.3d 736, 745-46 (Mo. App. W.D. 2021) (quoting *State v. Campbell*, 600 S.W.3d 780, 788-89 (Mo. App. W.D. 2020)). "The defendant bears the burden of showing that an alleged error has produced . . . a manifest injustice." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

"The constitutions of the United States and Missouri both guarantee a defendant in a criminal case the right to a jury trial." *State v. Hilbert*, No. SC99747, 2023 WL 2586186, at *3 (Mo. banc Mar. 21, 2023) (citing U.S. Const. amends. VI, XIV; Mo. Const. art. I, sec. 18(a), 22(a)). "A defendant may waive this right with the consent of the court [provided] 'such waiver by the defendant shall be made in open court and entered of record.'" *Id.* (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).[6] "To satisfy this standard, the waiver 'must be knowing, voluntary, and intelligent.'" *Id.* (quoting *Baxter*, 204 S.W.3d at 653). "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (emphasis omitted).

---

[6] *See also* Rule 27.01(b), which states,

The defendant may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. In felony cases, such waiver by the defendant shall be entered on the record and made in open court in person.

5

"The best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right." *Hilbert*, 2023 WL 2586186 at *3 (quoting *Baxter*, 204 S.W.3d at 655). Here, defense counsel filed a written waiver stating that the request for a bench trial was made with Emmanuel's input. After acknowledging the written waiver, the court engaged in the following colloquy with Emmanuel:

> [The court]: So you understand, Mr. Emmanuel, that you have the right to have a jury decide your guilt or innocence in this case?
>
> [Emmanuel]: Yes, Your Honor.
>
> [The court]: And you have made the determination you are going to have the Judge; meaning me, decide the guilt or innocence in this matter; is that right?
>
> [Emmanuel]: Yes, Your Honor.
>
> [The court]: You understand you have the right for the jury to make that determination?
>
> [Emmanuel]: Yes, Your Honor.
>
> [The court]: Have you spoken – without telling me what you've talked with [defense counsel] about, have you spoken with [defense counsel] about this decision?
>
> [Emmanuel]: Yes, Your Honor.
>
> [The court]: Do you believe you've had sufficient time to talk to [defense counsel] about it?
>
> [Emmanuel]: Yes, Your Honor.
>
> [The court]: Do you understand that, although [defense counsel] is able to give you advice whether or not to have a jury or a judge make the

6

decisions, ultimately it is your decision and yours alone; do you understand that?

[Emmanuel]: Yes, Your Honor.

[The court]: So is it your decision to waive your right to have a jury trial?

[Emmanuel]: Yes, Your Honor.

[The court]: And your decision is that you are waiving that right and I'm going to make the determination; do you understand?

[Emmanuel]: Yes, Your Honor.

. . .

[The court]: Do you have any questions for me about . . . your Waiver of Right to Jury Trial . . . ?

[Emmanuel]: No, Your Honor.

As is evident from the colloquy, the court repeatedly explained that Emmanuel had a right to have a jury decide his guilt or innocence, and each time Emmanuel affirmed his understanding of that right. He confirmed that he had spoken with counsel about the decision to proceed with a bench trial. And Emmanuel affirmed his understanding that the decision of whether to proceed with a jury or a bench trial was his alone to make. He then confirmed his desire to have his case tried by the court rather than a jury.

During closing arguments, Emmanuel's attorney stated that the question of whether to proceed with a bench trial "is one that is very pivotal, very important to the attorney/client relationship." Counsel continued,

> One of the reasons that we sought out a bench trial in this case instead of a jury trial is we knew that the Court would be in the best position to think about the law, think about the rights that my client has, and look at the

evidence squarely and objectively, knowing full and well that there are those overarching rights.

Counsel's remarks during closing argument also indicate that Emmanuel was fully informed of his right to a jury trial and had discussed the topic with counsel.

In *Hilbert*, the Court found no plain error in the trial court's acceptance of a jury trial waiver that had less support in the record. 2023 WL 2586186 at *5. The waiver in *Hilbert* was evidenced primarily by a docket entry indicating that the case was set for a bench trial and a statement by defense counsel on the record in defendant's presence that he wanted a bench trial. *Id*. at *1. No written waiver was submitted in *Hilbert*, nor did the trial court personally question the defendant on the record in open court. *Id.* at *1-2. Thus, evidence that the waiver in *Hilbert* was knowing, voluntary, and intelligent was less explicit than the evidence in this case; yet the Court still found no plain error.

The crux of Emmanuel's claim is that his waiver was not knowing or intelligent because the fact that a jury would have to reach a unanimous verdict was not explained to him.[7] But "a waiver [is] knowing [and] intelligent . . . if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances— even though the defendant may not know the *specific detailed* consequences of invoking it." *Ruiz*, 536 U.S. at 629. "A defendant, for example, may waive . . . his right to a jury trial . . . even if the defendant does not know . . . who will likely serve on the jury." *Id.* at

---

[7] "Perhaps most importantly, nothing in the record suggests that Mr. Emmanuel was aware of, or understood, that a jury, comprised of twelve, fair and impartial individuals, would have to reach a **unanimous** decision in order to find Mr. Emmanuel guilty or innocent." App. Br., pp. 23-24 (emphasis in original).

8

629-30. Thus, the trial court did not plainly err in finding Emmanuel's waiver of a jury trial to be knowing and intelligent, even though the court may not have explained every detail of the jury trial Emmanuel agreed to waive.

Our "sole focus must be upon whether the record established a defendant's waiver was knowing, voluntary, and intelligent and, therefore, constitutionally sufficient." *Hilbert*, 2023 WL 2586186 at *3 n.6. Here, the evidence established that Emmanuel understood he was entitled to have his guilt or innocence determined by a jury and that, by waiving that right, the court would decide his guilt or innocence. Emmanuel confirmed that he discussed this issue with counsel and had sufficient time to do so. And Emmanuel acknowledged that the decision was his alone. His waiver was knowing, voluntary, and intelligent and, thus, constitutionally sufficient, and the trial court did not commit plain error in accepting his waiver and proceeding with a bench trial. Point I is denied.

**II. The trial court did not err in convicting Emmanuel of first-degree rape because there was sufficient evidence of penetration.**

In his second point, Emmanuel challenges the sufficiency of the evidence regarding penetration. "Appellate review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable [fact finder] could have found the defendant guilty beyond a reasonable doubt." *State v. Gibbons*, 629 S.W.3d 60, 92 (Mo. App. W.D. 2021). "In making that determination, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew." *State v. Bertrand*, 636 S.W.3d 181, 186 (Mo.

9

App. E.D. 2020) (citing *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *State v. Canaday*, 476 S.W.3d 346, 354 (Mo. App. W.D. 2015) (quoting *Zink v. State*, 278 S.W.3d 170, 192 (Mo. banc 2009)). "The fact-finder determines the credibility of witnesses, resolves conflicts in testimony, and weighs the evidence." *Id.* "All evidence and inferences favorable to the State are accepted as true, and all evidence and inferences to the contrary are rejected." *Gibbons*, 629 S.W.3d at 92 (quoting *State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014)).

"A person commits the offense of rape in the first degree if he . . . has sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion." § 566.030.1. "Sexual intercourse" is defined as "any penetration, however slight, of the female genitalia by the penis." § 566.010(7). "'Proof of penetration may be shown by direct or circumstantial evidence,' and 'slight proof of penetration is sufficient.'" *State v. Barbee*, 568 S.W.3d 28, 31 (Mo. App. W.D. 2018) (quoting *State v. Hill*, 808 S.W.2d 882, 890 (Mo. App. E.D. 1991)).

Victim testified that she lost consciousness while Emmanuel was adjusting her catheter and, when she regained consciousness, he was on top of her in bed. She recalled Emmanuel penetrating her vagina with his penis; she experienced pain and asked him to stop. On cross-examination, Victim testified Emmanuel was "on top of me; he was inside of me." When asked whether her inability to maintain consciousness could have created false imagery, Victim emphatically denied it, stating,

10

> Because, when a woman has sex, there is a feeling in her vagina that is different from if somebody puts something foreign in your vagina. Whether it's urine – it's a different feeling. It's sticky, there's soreness. And that stickiness isn't just on the outside. It feels that way all the way up. Because the way a woman's body responds to sexual intercourse is different than a man's. So no.

On redirect, Victim again said her memory was clear that Emmanuel put his penis in her vagina without her consent.

Victim's testimony was direct evidence of penetration. "Direct evidence is testimony as to the existence or nonexistence of an element of the crime concerning which the witness claims personal knowledge." *State v. Bewley*, 68 S.W.3d 613, 617 (Mo. App. S.D. 2002) (quoting *State v. Butler*, 951 S.W.2d 600, 604 (Mo. banc 1997)). "When confronted with direct evidence, the only function of the trier of fact is to weigh the credibility of the witness." *Id.* at 617-18. Here, the trial court factored witness credibility into its verdict. And the court found credible both Victim's testimony regarding penetration and her physician's testimony about Victim's ability to recall events, to function, and to interact with hospital staff. Moreover, Victim's testimony was buttressed by Emmanuel's co-worker who testified that Emmanuel twice admitted to having had sex with Victim.

This case is similar to *Bewley* in that the victim there testified that she felt defendant's penis go in her vagina, something she was able to identify because she had knowledge and experience regarding sexual intercourse. *Id.* at 617. Based on the victim's testimony, the court concluded that there was sufficient evidence of penetration and, thus, the defendant had engaged in sexual intercourse with the victim. *Id.* at 618.

11

Emmanuel attempts to undermine Victim's credibility on the issue of penetration by arguing that (1) her testimony showed that the combination of her infection and her medications made her "a little loopy" and "kind of disassociated" and (2) there was no DNA evidence of penetration. But Emmanuel's arguments rely on evidence and inferences that are contrary to the verdict and conflict with the court's credibility determinations; thus, we will not consider them. *See State v. Millens*, 648 S.W.3d 784, 788 (Mo. App. W.D. 2022) (refusing to consider arguments "rely[ing] on either evidence or inferences adverse to the verdict"); *see also Bewley*, 68 S.W.3d at 618 ("While the physical findings of the medical examination of [victim] may not support her testimony of the assault, this fact standing alone does not negate the deference given by the trial court to [her] testimony."). Point II is denied.

## Conclusion

Because the trial court did not plainly err in accepting Emmanuel's jury trial waiver and there was sufficient evidence to support his conviction, the trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Lisa White Hardwick, Judge, concur.